[Civ. No. 56789. Second Dist., Div. One. Feb. 28, 1980.]

TIMES MIRROR COMPANY, Plaintiff and Appellant, v.
FRANCHISE TAX BOARD, Defendant and Respondent.

## COUNSEL

Gibson, Dunn & Crutcher, Peter L. Baumbusch, Don Howarth and Robert A. Rizzi for Plaintiff and Appellant.

George Deukmejian, Attorney General, and Philip C. Griffin, Deputy Attorney General, for Defendant and Respondent.

## OPINION

COLE, J.*—The issue in this case is the treatment to be accorded to capital gains income received by appellant the Times Mirror Company

*Assigned by the Chairperson of the Judicial Council.

when it sold the stock of the Sun Company in 1969. Believing the income to be "business income" as defined by the Uniform Division of Income for Tax Purposes Act (UDITPA), Revenue and Taxation Code sections 25120 to 25139,[1] appellant reported it as such for franchise tax purposes. Respondent Franchise Tax Board took a contrary position, asserting that the capital gains were "nonbusiness income," and assessed additional taxes against appellant. Appellant paid the assessment, complied with refund claim procedures and brought this action to secure a refund of the additional amount. The case was tried on stipulated facts and judgment went in favor of respondent. This appeal followed. We reverse, holding that under the agreed upon facts of this case, the capital gains clearly constituted business income.

Before reciting the facts which lead us to this conclusion, it is helpful to set forth the nature of the problem and to quote applicable statutes. When a corporation such as appellant conducts business in more than one state, it is necessary to determine how much of its income is to be attributed to one taxing state as opposed to another. (See, generally, Keesling & Warren, *The Unitary Concept in the Allocation of Income* (1960) 12 Hastings L.J. 42, hereafter cited as Keesling I.) Prior to the adoption of UDITPA various formulas and accounting methods were employed to accomplish this purpose. Certain types of income were treated one way, and other types another way. A "unitary" business was distinguished from a "separate" business, and the selection of the proper classification, formula, and accounting method made a significant difference in the corporation's tax liability. (*Butler Brothers* v. *McColgan* (1941) 17 Cal.2d 664, 667-668 [111 P.2d 334]; *John Deere Plow Co.* v. *Franchise Tax Bd.* (1951) 38 Cal.2d 214, 217, 223-225 [238 P.2d 569].) UDITPA was enacted in California in 1966. Its expressed general purpose is "to make uniform the law of those states which enact it." (§ 25138.)[2]

To achieve this result, section 25121 requires taxpayers having income from business activity which is taxable both within and without this state to allocate and apportion as provided by UDITPA. Section

---

[1]All statutory references are to sections of the Revenue and Taxation Code.

[2]"The objectives were twofold: (1) to promote uniformity in allocation practices among the 38 states which impose taxes on or measured by the income of corporations, and (2) to relieve the pressure for congressional legislation in this field." Keesling and Warren, *California's Uniform Division of Income for Tax Purposes Act* (1967) 15 UCLA L.Rev. 156. (Keesling II.) UDITPA has been enacted in at least 22 states. 7A Uniform Laws Annotated (master ed., 1979 pocket part) page 4.

25128 requires *business income* to be *apportioned* among the states involved by the use of a prescribed formula (which is further described in later sections of UDITPA). Section 25123 states that *to the extent that they constitute nonbusiness income*, certain classes of income, including capital gains shall be *allocated* as provided in sections 25124 through 25127. Section 25125, subdivision (c), provides that "[c]apital gains and losses from sales of intangible personal property are allocable to this state if the taxpayer's commercial domicile is in this state." Since it is agreed that Times Mirror's commercial domicile is in California, *all* of the capital gains at issue are taxable by California, if they constitute nonbusiness income. Conversely, if they are business income, the capital gains are to be apportioned among the various states in which appellant's income may be taxable, resulting in a lesser tax to be due in this state.

Section 25120, subdivision (a) defines business income: "(a) 'Business income' means income arising from transactions and activity in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations."

Section 25120, subdivision (d), defines nonbusiness income: "(d) 'Nonbusiness income' means all income other than business income."

██ The parties entered into a written stipulation of the facts. So far as is necessary for our decision, they are as follows: The Sun Company was defined to "mean The Sun Company *including the intangible rights represented by its stock*." (Italics added.) During the time the Sun Company was owned by appellant, "the business of The Sun Company was conducted as a unitary business with Times Mirror.... The Sun Company was acquired to further the regular business operations of the unitary group of businesses headed by Times Mirror.... During the time it was owned by Times Mirror...The Sun Company was managed as an integral part of the regular business operations of Times Mirror...."

The stipulation also referred to an affidavit filed by Mr. Milton H. Day, vice president and assistant to the president of the Times Mirror Company and stated that the facts set forth therein are within the knowledge of Times Mirror Company but the Franchise Tax Board

does not contest any of such facts. Mr. Day's affidavit is set forth in pertinent part in the margin.[3]

Comparison of the stipulation, as augmented by the affidavit of Mr. Day, with the statute at once shows that the parties agreed that the facts precisely met the statutory definition of business income in section 25120, subdivision (a). Counsel for respondent stated to the trial court that he felt there was no harm in stipulating to the exact language of the statute because it did describe what the relationship between the two companies consisted of. When asked by the trial court if he had "hung yourself with that stipulation" he stated: "I may have, because I don't have any choice in the matter. The fact of the matter is that this was a unitary operation. And whenever many corporations are acquired by a parent in the performance of unitary operations, there is no way you can get away from that language, that it's an integral part." He

---

[3]"2. The money and other property used by Times Mirror to purchase The Sun Company were derived from business income resulting from activity engaged in by Times Mirror in the regular course of its trade or business operations and such money and other property constituted business assets of Times Mirror.

"3. The earnings received by Times Mirror with respect to The Sun Company were commingled with the business assets of Times Mirror and were used to pay regular trade or business expenses of Times Mirror or were otherwise used in the regular course of the trade or business operations of Times Mirror.

"4. Any expenses incurred by Times Mirror with respect to The Sun Company were incurred in the regular course of the trade or business operations of Times Mirror, and as such were used to reduce the business income earned by Times Mirror.

"5. All loans made by Times Mirror with respect to The Sun Company were business assets and the income earned by Times Mirror with respect to such loans was business income earned in the regular course of the trade or business operations of Times Mirror. Any expenses incurred by Times Mirror with respect to such loans to The Sun Company were incurred in the regular course of the trade or business operations of Times Mirror and as such were used to reduce the business income earned by Times Mirror.

"6. In the past sixteen (16) years, Times Mirror has directly or indirectly acquired control of substantially all the stock of thirty-six (36) corporations which have been included in the combined California Franchise Tax return of Times Mirror and its affiliates and the businesses of such corporations have been conducted as a unitary business with Times Mirror.

"7. During the past sixteen (16) years, Times Mirror has directly or indirectly sold control of substantially all the stock of ten (10) corporations which had been included in the combined California Franchise Tax return of Times Mirror and its affiliates and the business of which had been conducted as a unitary business with Times Mirror.

"8. The process of negotiating a contract of sale of The Sun Company by Times Mirror was conducted in substantially the same manner as the sales of stock of the corporations referred to in paragraph 7 above.

"9. The money and note obtained by Times Mirror upon the sale of The Sun Company were commingled with the business assets of Times Mirror and were used to pay regular trade or business expenses of Times Mirror or were otherwise used in the regular course of the trade or business operations of Times Mirror."

further stated that he did not believe that his stipulation was inadvertent.

Respondent argues, however, that certain of its own regulations (issued in 1971, approximately two and one-half years after Times Mirror sold the Sun Company), interpreting UDITPA compel a result in its favor. It embellishes that argument with an attempted Delphic distinction between the Sun Company on the one hand and the stock of the Sun Company on the other hand, stating in its brief to us "The Board stipulated to the integrity of Times-Mirror and the Sun Company. However, as to the stock itself, it was only 'integrally connected' with the unitary publishing business but not an integral part of that business." And, without citing cases that support a contrary result, respondent argues that some pre-UDITPA history supports those regulations. The arguments are unpersuasive, and fly in teeth of the facts stipulated to. We briefly discuss them below.

First, however, we state the obvious. Respondent has not pointed to one matter in this record which detracts from the complete and perfect fit between the statutory glove, and the factual hand. Respondent agrees (see its own reg. 25120, subd. (c), Cal. Admin. Code, tit. 18) "that the labels customarily given to types of income—interest, rents, royalties, capital gains—cannot be relied upon to tell us whether the income is business or nonbusiness income. The relevant inquiry is whether the income arises in the main course of the taxpayer's trade or business." (Keesling II, *supra*, at p. 164.) Since it was stipulated that the income here involved did so arise, that should end the matter. It would stand the situation on its head to say the contrary. Respondent entered into the stipulation knowingly and deliberately and not as the result of any overreaching or mistake. It is bound by the facts stipulated to, (*Palmer* v. *City of Long Beach* (1948) 33 Cal.2d 134, 141-142 [199 P.2d 952]) as is the court *Estate of Burson* (1975) 51 Cal.App.3d 300 [124 Cal.Rptr. 105]), even in tax matters. (*Japan Food Corp.* v. *County of Sacramento* (1976) 58 Cal.App.3d 891, 897 [130 Cal.Rptr. 392] —stipulation as to assessed value of goods.) It is to be remembered that among the facts agreed to by the parties (affidavit of Mr. Day, par. 9) is the fact that the proceeds of the sale of the Sun Company "were commingled with the business assets of Times Mirror and were used to pay regular trade or business expenses of Times Mirror or were otherwise used in the regular course of the trade or business operations of Times Mirror." We hold that these proceeds, which include any capital gains

income received by Times Mirror, constitute business income, as a matter of law.

What we have said above should end this opinion. However, respondent has made certain arguments earnestly, and at length, and at least one of them was adopted by the trial court. We briefly explain why we reject them. The principal argument urged by respondent is that there is some sort of distinction between Times Mirror's ownership of the stock of the Sun Company, and that the stipulation was not intended to state that the stock itself was an integral part of the business. But the stipulation itself defined its terms. As we have emphasized above, the term "The Sun Company" was defined to "mean The Sun Company *including the intangible rights represented by its stock.*" Thus, the stipulation included the proceeds from the sale of that stock, and some of the proceeds constituted the capital gains income which was received.

Further refuting the contention that the stock as such was not acquired, managed or sold as an integral part of Times Mirror's unitary business is the fact that the Sun Company was a corporate subsidiary of appellant. Counsel for respondent himself stated to the trial court: "I don't know if it's possible for a parent company to own the assets of a subsidiary. I think it's impossible. I think all you can own is the stock of a subsidiary." The tax laws do not require that a corporate parent directly own tangible assets, rather than stock. Stating the fact that the corporate subsidiary was acquired and managed and disposed of in the course of the unitary business of appellant, is to state that the stock was so acquired, managed and disposed of, for that is the only way a parent corporation can buy, hold, and sell its subsidiary.

Appellant also relies on various pre-UDITPA cases for the proposition that income from stock of a subsidiary corporation is nonbusiness income to be taxable at the commercial domicile of the corporation. (E.g., *Southern Pacific Co.* v. *McColgan* (1945) 68 Cal.App.2d 48 [156 P.2d 81]; Appeal of Safeway Stores, Inc., Bd. of Equalization (1962) C.C.H. Cal. Tax Reports 201-897; Appeal of Avon Products, Inc., Bd. of Equalization (1962) C.C.H. Tax Reports 201-944; Appeal of Thomas J. Lipton, Inc., Bd. of Equalization (1965) C.C.H. Tax Reports 203-004; Appeal of Dohrmann Commercial Company, Bd. of Equalization (1956) C.C.H. Tax Reports 200-504.) The Board of Equalization opinions all adopted reasoning similar to that in *Southern Pacific Co.* v. *McColgan.* All of these cases were concerned with the commercial or

business situs of corporate stock and the application of the doctrine of mobilia sequuntur personam. There is no necessary correlation between the treatment accorded under those principles, and those underlying the present statute. Indeed, other cases not relied upon by respondent, but also involving pre-UDITPA law applied concepts which markedly parallel and in some cases may be the forerunners of the UDITPA concept of allocation of dividend and capital gain income among the states if it is business income. (E.g., *Holly Sugar Corp.* v. *Johnson* (1941) 18 Cal.2d 218 [115 P.2d 8]; and cases cited in Appeal of General Dynamics Corp., Bd. of Equalization (1975) C.C.H. State Tax Reports 205-274, at p.14, 885-15.) These cases, and the General Dynamics case itself which applies UDITPA concepts, recognize that dividend or capital gain income can constitute business income. Indeed, General Dynamics emphasizes the concept to which appellant gives only lip service, that the old classifications given income, including dividends and capital gains, are not of any assistance under the present law.

The last major argument made by respondent is that we must follow its regulations in interpreting the law unless they are arbitrary, capricious or patently unreasonable and that one of the regulations compels the result reached by the trial court. The trial court apparently thought it was required to reach its result for this reason. But the regulation relied upon does not compel the result reached, and to hold that it does is, in our view, to reach a strained result which flies in the teeth of the statute and thus was not within the discretion of respondent to adopt.

The regulation in question is California Administrative Code, title 18, section 25120, which reads in applicable part: "(a)...Section 25120(a) defines 'business income' as income arising from transactions and activities in the regular course of the taxpayer's trade or business and includes income from tangible and intangible property if the acquisition, management, and disposition of the property constitute integral parts of the taxpayer's regular trade or business operations. In essence, the business income of the taxpayer is that portion of the taxpayer's entire net income which arises from the conduct of the taxpayer's trade or business operations. For purposes of administration of Sections 25120 to 25139, inclusive, the income of the taxpayer is business income *unless clearly classifiable as nonbusiness income* under Sections 25120 to 25139, inclusive and the regulations thereunder.

"Nonbusiness income means all income other than business income.

"• • • • • • • • • • • • • •

"(c) The classification of income by the labels customarily given them, such as interest, dividends, rents, royalties, capital gains, is of no aid in determining whether that income is business or nonbusiness income. The gain or loss recognized on the sale of property, for example, may be business income or nonbusiness income depending upon the relation to the taxpayer's trade or business.

"• • • • • • • • • • • • •

"(2)...As a general rule, gain or loss from the sale, exchange or other disposition of real or tangible or intangible personal property constitutes business income if the property while owned by the taxpayer was used to produce business income. However, the gain or loss will constitute nonbusiness income if such property was subsequently utilized principally for the production of nonbusiness income or otherwise was removed from the property factor. (See Regs. 25129 to 25131, inclusive.)

"• • • • • • • • • • • • •

"(4)...Dividend income is business income when dealing in securities is a principal business activity of the taxpayer. Most other dividends are nonbusiness income.

"• • • • • • • • • • • • •

"...The taxpayer owns all the stock of a subsidiary corporation which is engaged in a business similar to that of the taxpayer. Any dividends received from the subsidiary would be nonbusiness income." (Italics added.)

In the first place, the regulation itself provides that income is business income unless it is *"clearly classifiable"* as nonbusiness income. It is manifest that the income involved here is not so clearly classified. Indeed, as we have already noted, the argument in favor of classifying it as nonbusiness income is opaque, to say the least. Thus, the entire regulation seems inapplicable. Secondly, we have already noted that it was essential for Times Mirror to acquire, own, and dispose of the stock to produce business income. Thus, under subdivision (c) of the regulation, business income is involved here. In short, under the *statute*, as opposed

to the regulations, and given the facts which exist here, "In the instant matter, the facts do not permit a determination that the [Sun Company] stock was either acquired or held as an investment." (Appeal of General Dynamics Corp., *supra*, Cal. Tax Reports 205-274, at p. 14, 885-17.)

The trial court commented that the result reached by it was contrary to the uniformity which is the objective of UDITPA. That is certainly so. Respondent concedes the point. Its own brief contains an appendix showing that the interpretation urged upon us would leave this state in the distinct minority. Indeed, respondent states that "Necessary uniformity must await further decisional administrative and legislative action." We disagree. Applying the cardinal principle of legislative interpretation—ascertainment of the intent of the legislative body, we note that UDITPA itself commands us "[t]his act *shall* be so construed as to effectuate its general purpose to make uniform the law of those states which enact it." (§ 25138.) Our holding today reaches that result.

The judgment is reversed with directions to enter judgment for appellant.

Lillie, Acting P. J., and Hanson, J., concurred.

A petition for a rehearing was denied March 28, 1980, and respondent's petition for a hearing by the Supreme Court was denied May 28, 1980. Bird, C. J., was of the opinion that the petition should be granted.