391 So.2d 762 (1980)
DEPARTMENT OF REVENUE of the State of Florida and Gerald A. Lewis, As Comptroller of the State of Florida, Appellants,
v.
PARKER BANANA COMPANY, a Florida Corporation, Appellee.
No. 79-581.
District Court of Appeal of Florida, Second District.
December 24, 1980.
Jim Smith, Atty. Gen., and E. Wilson Crump, II, Asst. Atty. Gen., Tallahassee, for appellants.
J. Rex Farrior, Jr., Stephen A. Crane, and Charles P. Schropp of Shackleford, Farrior, Stallings & Evans, Tampa, for appellee.
DANAHY, Judge.
For purposes of the tax imposed on corporations and other artificial entities by the Florida Income Tax Code,[1] tax base net income is determined in accordance with an apportionment formula which reflects the legislative view of how much of the net income of a domestic or foreign corporation should fairly be taxed by Florida. Among other things, the formula requires a determination of the total sales of the taxpayer in this state during the taxable year or period. That determination is the subject of the dispute in this case.
Appellee Parker Banana Company (Parker Banana) is a domestic corporation which imports bananas to Tampa in refrigerated ships and sells them to wholesalers, some of whom are from out of state. Bananas sold to purchasers from out of state are transported to points outside Florida. All of Parker Banana's purchasers arrange their own pickup and transportation. Parker Banana conveys the boxes of bananas by conveyer belt from the ship's hold directly into refrigerated trucks sent by or on behalf of the purchasers. Some purchasers send trucks owned or rented by them. Others use common carriers or contract carriers.
The Florida apportionment statute[2] provides that "sales of tangible personal property are in this state if the property is delivered or shipped to a purchaser within this state, regardless of the f.o.b. point or other conditions of the sale" (emphasis ours). In computing its Florida corporate income tax, Parker Banana treated all sales to purchasers from outside Florida as sales not in this state. Appellants (herein collectively *763 called "the Department") took the position that only those sales to out-of-state purchasers who used common carriers to pick up their bananas could properly be characterized as sales not in this state for purposes of the apportionment formula. The Department assessed a deficiency against Parker Banana accordingly, which Parker Banana paid under protest. In this suit for refund, the trial judge ruled that the Department's position was incorrect and entered a final summary judgment for Parker Banana. We affirm.
In the phrase "property delivered or shipped to a purchaser within this state," to what do the words "within this state" refer? That is the simple question which confronts us, and neither party has cited to us any authority which specifically addresses that question. Our own extensive research has produced none.
The Department reaches its position in this case by applying the words "within this state" to the word "delivered." The Department contends that those out-of-state purchasers from Parker Banana who arrange to pick up their bananas other than by common carrier take delivery as a matter of law at dockside in Tampa. Therefore, says the Department, in each such case there is a delivery within this state and the sale is within this state.
We disagree with the Department's construction of the statute. In our view, the words "within this state" must refer to the word "purchaser" if the legislative intent is observed. Under our construction of the apportionment statute, a sale is in this state if the sale is to a Florida purchaser and that, in turn, depends on the destination of the goods sold. It matters not whether delivery or shipment occurs in Florida or out of Florida. Our interpretation of the statute accords with the legislative intent to assign to Florida for tax purposes a portion of net income attributable to sales by the taxpayer in the Florida market as determined by the destination of the goods. A. England, Florida Corporate Income Taxation: Background, Scope and Analysis, in An Introduction to Florida Corporate Income Taxation 4, 14 (1972).
The Department's interpretation of the apportionment statute ignores basic rules of sentence construction and would have the effect of undermining the legislative intent. Surprisingly, the Department argues that the words "within this state" apply to the word "delivered" but not to the word "shipped." It does not treat as sales in Florida those sales by Parker Banana to out-of-state purchasers who arrange for shipment by common carrier. We appreciate the probable reason why the Department insists on such a tortured construction of the statute. Since the statute applies to out-of-state sellers as well as to domestic sellers, applying the words "within this state" to both the word "delivered" and the word "shipped" would result in excluding from Florida taxing jurisdiction a huge portion of sales by otherwise taxable out-of-state sellers to Florida purchasers. Only those in which either delivery or shipment occurs in Florida would be includable. But the Department cannot have its cake and eat it too; we see no way in the world that the statute can logically or grammatically be construed so that the words "within this state" apply only to the word "delivered".
Examples come readily to mind as well of situations in which there can be a sale by a Florida seller to a Florida purchaser with Florida the destination of the goods, yet neither delivery nor shipment occurs in this state. If, for example, Parker Banana imported bananas to New York by refrigerated ships and sold those bananas to Florida purchasers who took delivery at dockside in New York for transportation to Florida, those sales should be considered as sales in this state for purposes of the apportionment statute.
Our position is supported by the Department's own regulations, which refer to the term "purchaser within this state." Fla. Adm.Code Rule 12C-1.15(4)(d)4. The examples in the regulations demonstrate that if the destination of goods sold is Florida, then Florida is considered the consumer state-the market in which the sale is made-and the purchaser, regardless of business *764 location or residence, is the equivalent of a Florida purchaser.
Thus under the destination test, a purchaser from outside this state does not become a "purchaser within this state" merely by sending a representative to pick up the goods in Florida; if, however, the destination of the goods is a point within Florida, then the purchaser is within this state.
The Department has cited to us, in support of its position, the decision in Coulter Electronics, Inc. v. Department of Revenue, 365 So.2d 806 (Fla. 1st DCA 1978). In that case our sister court held that certain inter-company sales were not sales. In reaching that conclusion, the court said that "the inter-company transactions also lack `delivery,' the factor under Florida Statute Section 214.71 which determines whether a sale of tangible personal property has occurred in Florida." The facts in the Coulter case are clearly distinguishable from the facts here involved, and the court's remark concerning place of delivery was unnecessary to its holding. Therefore, we do not consider the Coulter decision as authority for the proposition urged by the Department in this case.
In fact, the language adopted by Florida in the sales portion of the apportionment statute was chosen specifically because it establishes the "destination" test for determining whether sales are in this state for corporate income tax purposes. England, supra, at 14. The language of the statute is taken from Section 16(a) of the Uniform Division of Income for Tax Purposes Act (UDITPA). Florida did not, however, adopt all the provisions of UDITPA and so we are struggling with language taken out of context. Under UDITPA a corporation apportions net income to a state for income tax purposes only if it has income from business activity which is taxable both within and without the state. UDITPA Sec. 2. That may not be the case with Parker Banana, but Florida law mandates apportionment whether or not a corporation is engaged in a truly multistate business. § 220.15, Fla. Stat. (1979).
UDITPA also contains a "throwback rule" which apportions sales to the state of origin notwithstanding that they are made to an out-of-state purchaser if the taxpayer is not taxable in the state of the purchaser. UDITPA Sec. 16(b). A taxpayer in Florida which follows the practice of delivering goods in this state to representatives of out-of-state purchasers for transportation out of state might not be subject to income taxation in the purchasers' states by reason of those sales because of the jurisdictional barrier.[3] Had Florida adopted the throwback rule, the Department might not have felt constrained to take the contorted position it has taken in this case in order to capture Parker Banana's sales to out-of-state purchasers.
Our failure to find any case interpreting the meaning of "within this state" as used in the Florida statute probably results from the fact that the issue simply does not arise where apportionment is permitted only to a truly multistate business or the throwback rule is adopted. The statutory language barrier faced by the Department in this case may very well be unique to Florida and perhaps is a problem that should be addressed by the legislature. We have no choice but to rule that the apportionment statute does not support the Department's position.
AFFIRMED.
RYDER, J., concurs.
OTT, Acting C.J., dissents with opinion.
OTT, Acting Chief Judge, dissenting.
I dissent.
Appellee, a corporation subject to Florida income tax, imported bananas into Florida and sold them as they were unloaded from *765 the boat. All purchasers, regardless of where they were from, were required to take delivery at the dock. This case primarily involves some of the out-of-state buyers who took delivery in either their own vehicles or those of commercial carriers with which they had contracted. What happened to those bananas after that is not clearly established, but as I see it that is not really material. We are dealing with nonresident purchasers, and I know of no way in which the final destination of the bananas could ever be reliably established. Appellee convinced the trial court that such sales were not subject to Florida's corporate income tax, and the majority opinion affirms that result.
The controlling statute seems to me to clearly subject such sales to taxation. In essence, the legislature has declared that sales made in Florida by a corporate seller are taxable and, conversely, sales made outside Florida are not taxable. The critical question in each case, then, is whether a particular sale was made in or out of the state. The pertinent sections of the Florida Corporate Income Tax Law are sections 220.11(1), 220.12(1), 220.15 and 214.71(3), Florida Statutes. The latter section reads, in part, as amended retroactively in 1979, as follows:
(3) The sales factor is a fraction the numerator of which is the total sales of the taxpayer in this state during the taxable year or period and the denominator of which is the total sales of the taxpayer everywhere during the taxable year or period.
(a) 1. Sales of tangible personal property are in this state if the property is delivered or shipped to a purchaser within this state, regardless of the f.o.b. point or other conditions of the sale. (Emphasis supplied.)
First, it should be noted that the statute very clearly directs that each sale be viewed from the position of the Florida taxpayer, not the purchaser. All "sales of the taxpayer in this state" obviously means all sales the taxpayer has accomplished, finished, terminated, or completed in this state. I agree that Florida chose a "destination test" for determining whether a sale is made within or outside this state, but we must bear in mind that the state is interested in sales only insofar as the income of the seller is concerned. Once goods reach the hands of the buyer, what the buyer does or plans to do with them thereafter is of no consequence. So far as the seller was concerned in the instant case, the bananas had one and only one destination-the buyer's truck on the Tampa wharf.
In dealing with the issue to be resolved here, it is essential that we also keep in mind that Florida imposes a tax on the income of not just Florida-based corporations, but upon all corporations "conducting business, deriving income or existing within the state." Section 220.02, Florida Statutes (1971). The statute under review, section 214.71, merely implements that general intent by specifying the criteria for ascertaining the amount of income a corporation derives from business conducted in Florida. In my opinion, the simple, easy-to-understand-and-apply test selected by the legislature is that a seller will be deemed to derive income from the state in which the buyer takes physical possession of the goods. That is the destination, the point at which the goods pass from the seller to the buyer.
The majority applies the destination test from the standpoint of the buyer. In their view, the delivery of goods to the purchaser at some point within this state is not a Florida sale unless the goods are to enter the "Florida market." In other words, the majority looks to the ultimate destination intended by the purchaser. Thus, they assert that it makes no difference whether a Florida corporate seller ships the goods to an out-of-state buyer; or an out-of-state buyer comes into Florida, purchases merchandise, takes physical possession of it and personally removes it from the state; or an out-of-state seller ships goods into Florida to a Florida purchaser who then resells or reships the goods to an out-of-state destination; in each instance, according to the majority theory, it would be an out-of-state sale not subject to the Florida tax.
*766 That result is said to be compelled by the statutory definition of an in-state sale as one in which the goods are "delivered or shipped to a purchaser in this state." That language doesn't mean, says the majority, a delivery or shipment to a purchaser then present within the physical boundaries of this state, but instead means a purchaser who intends to retain those goods in Florida. In my opinion, the statute is in no way susceptible to such a strained construction.
It is Hornbook law that in construing a statute each part of it must be given effect, and words used in the statute should be given their ordinary, commonly understood meaning. 30 Fla.Jur. 241, 281. It seems to me that the reasoning of the majority cannot be reconciled with those rules.
The statute clearly contemplates two distinctly separate situations, (1) where any corporate seller delivers goods to any purchaser who is then in this state and (2) where any seller ships goods to any purchaser at a location within this state. There surely can be no mistaking the plain, unambiguous meaning of the first situation. The use of the indefinite article "a" before the word "purchaser," in preference to the definite "the," was undoubtedly purely fortuitous. I read no significance whatsoever into that choice, and therefore cannot accept the majority's theory that "a purchaser within this state" refers to something other than the geographical location of the purchaser when the goods are delivered to him.
I do, however, attach significant meaning to the words "or shipped." To give effect to that language, we must first recognize that whenever a seller delivers goods to the buyer at any point in Florida, that sale is expressly covered by the statute. By adding the words "or shipped," the legislature obviously intended to expand the category of Florida sales. It is equally obvious that the shipments referred to are not those shipments which are made by the seller in its own or hired private conveyance, because (as just noted) goods delivered by the seller to a purchaser within this state are already covered by the statute. Nor could they be shipments made by the purchaser in its own or hired private conveyance, because such goods would have been delivered to the purchaser already and thus could not qualify as "property ... shipped to a purchaser within this state." By the process of elimination, then, the shipments specifically mentioned in the statute must be those in which goods have been delivered by the seller to a public (common) carrier for transport and delivery to the purchaser at some point in Florida.
Under the statutory scheme, then, the location of the goods being sold is immaterial, and so is the location of the seller. It is the location of the buyer when he takes possession of the goods that is of prime importance. If that occurs in Florida, the seller must pay the Florida tax on profits accruing from that sale, assuming the seller is a corporation and otherwise subject to Florida's taxing jurisdiction.[1]
The majority finds fatal inconsistency in the fact that, under the agreed statement of facts, the Department does not regard as in-state those sales in which appellant delivers goods in Florida to a common carrier for shipment and delivery to the purchaser at some out-of-state location. The Department has not advised us in so many words why it treats shipments by common carrier differently from shipments by a purchaser's private, contract carrier. However, I think it would be totally inconsistent for the Department to adopt any other policy. If my interpretation of the statute is sound, shipments of goods into this state by common carrier are classified as Florida sales, subjecting the selling corporation to Florida income tax. It necessarily follows that shipments by common carrier to a destination outside this state would not be Florida sales. But the short answer to this feature *767 of Department policy is that it is not before us, and merely clouds the real issue presented by the facts of this case. The majority opinion is bottomed on a sweeping theory that even if an out-of-state buyer personally enters this state and purchases merchandise which he personally then exports outside Florida, that is not a sale in this state for the purpose of taxing the seller. It is with that theory that I find fault, and not with what the Department might or might not do in other situations.
Under the majority's theory, classifying each sale according to the subjective intentions of the purchaser, I think we face an entirely unmanageable situation. As a practical matter, Florida probably does not have and could not afford the massive manpower necessary to ascertain the "ultimate destination" of all goods first sold in Florida and later sold and resold or shipped and reshipped elsewhere in today's complex marketplaces.
The rule established by the majority opens a veritable "Pandora's box" of games for corporate taxpayers to play-games in which the State of Florida will consistently be the big loser. For instance, there is absolutely nothing in the Florida Income Tax Code (Florida Statutes 220.01 et seq.) which would warrant disparate treatment of wholesale and retail merchants, or sanction any distinction between those non-residents who enter this state for the primary purpose of purchasing large quantities of goods and those tourists who buy here only incidentally. Under the rule of the majority opinion, no corporate retailer doing business in Florida can be taxed on income derived from sales to non-residents who intend to take their purchases back home with them. The entire corporate income tax program will devolve into an honor system, with no possibility of strict enforcement by the Department. I question the feasibility of such a program, and I doubt that the legislature ever intended such an anomalous result. Policing and enforcement should be largely-if not totally-accomplished by an audit and examination of the seller's (taxpayer's) books and records.
I would reverse the judgment of the trial court and deny the refund to appellee.
NOTES
[1] Ch. 220, Fla. Stat. (1979).
[2] § 214.71, Fla. Stat. (1979).
[3] The jurisdictional barrier is the nexus required by the federal constitution and federal law for state taxation of the income of a corporation conducting only an interstate business within the state. Without a "throwback rule" such as that provided in UDITPA, the jurisdictional barrier can produce "nowhere income." Corrigan, Interstate Corporate Income Taxation-Recent Revolutions and a Modern Response, 29 Vand.L.Rev. 423, 429 (1976).
[1] It would seem that the tax law, like so many other laws governing multi-state operators, requires a reasonable nexus between the seller and the taxing state. Mere presence of the seller in that state, however, does not per se supply the necessary contact. A policy that sales will be allocated to the state in which the goods are actually delivered into the possession of the buyer seems simple, reasonable and enforceable.