[No. B064073. Second Dist., Div. Four. July 7, 1994.]

McDONNELL DOUGLAS CORPORATION, Plaintiff and Appellant, v. FRANCHISE TAX BOARD, Defendant and Appellant.

## Counsel

Bryan Cave, Frank E. Merideth, Jr., Harlan J. Kwiatek and Norman H. Lane for Plaintiff and Appellant.

Daniel E. Lungren, Attorney General, Edmond B. Mamer and Richard W. Bakke, Deputy Attorneys General, for Defendant and Appellant.

## Opinion

**HASTINGS, J.**—The Franchise Tax Board of the State of California appeals from the judgment entered in favor of McDonnell Douglas Corporation on its complaint for refund of franchise taxes paid under protest. McDonnell Douglas cross-appeals from the trial court's denial of its request for attorney fees expended in pursuing its complaint. We affirm the judgment.

### Summary of Facts

Plaintiff and appellant McDonnell Douglas Corporation (MDC) is a Maryland corporation which manufactures commercial and military aircraft and aircraft parts. It sells its aircraft to an international market and owns a facility located in Long Beach. The majority of its commercial aircraft are delivered to the customers in Long Beach or at a facility in Yuma, Arizona. The customers then arrange for transportation of the aircraft.

MDC paid California franchise taxes on its business income for the tax years 1973 and 1974 and sought a refund for a portion of the total amount of taxes paid.

When its requests for refund were denied, MDC filed an action against defendant and respondent Franchise Tax Board (the Board) for a refund.

MDC sought a refund of approximately $468,000 for 1973 and approximately $943,459 for 1974.[1] Following a court trial, MDC prevailed. Subsequently, MDC moved to recover its attorney fees expended in pursuing its refund, and the trial court denied that motion.

CONTENTIONS ON APPEAL

The Board contends that the trial court erred in computing the amount of franchise taxes due from MDC, specifically in excluding sales of aircraft delivered to purchasers in California, but destined for use out of state. MDC cross-appeals, contending that the trial court should have granted its motion for attorney fees.

DISCUSSION

1. *Introduction*

Pursuant to Revenue and Taxation Code sections 25128-25136,[2] the amount of franchise taxes owed by a taxpayer with income from business activity is calculated according to a complex formula which takes into account, inter alia, three factors: (1) the value of real and tangible personal property owned or rented and used in California during a specified year (the "property factor"); (2) the amount paid for employee compensation in California during a specified year (the "payroll factor") and (3) sales made in California during a specified year (the "sales factor").

This statutory scheme is derived from the Uniform Division of Income for Tax Purposes Act (UDITPA), which has been adopted by over 20 states and was enacted in California in 1966. (*Times Mirror Co.* v. *Franchise Tax Bd.* (1980) 102 Cal.App.3d 872, 874 [162 Cal.Rptr. 630].) Sections 25134 and 25135 are substantially identical to UDITPA sections 15 and 16. The expressed general purpose of UDITPA is to standardize state corporate income tax laws and "to make uniform the law of those states which enact it." (§ 25138; *Times Mirror Co.* v. *Franchise Tax Bd., supra,* at p. 874.)

Although the Board's calculation of both the property factor and the sales factor were contested by MDC in the trial court, on appeal the only factor in dispute is the sales factor.

For purposes of computing the sales factor, section 25135 provides that: "Sales of tangible personal property are in this state if: [¶] (a) *The property*

---

[1] By the time of trial, substantial interest had accrued, resulting in a total judgment of over $6 million.

[2] All statutory references shall be to the Revenue and Taxation Code, unless otherwise specified.

*is delivered or shipped to a purchaser,* other than the United States government, *within this state* regardless of the f.o.b. point or other conditions of the sale; *or* [¶] (b) *The property is shipped from an office, store, warehouse, factory, or other place of storage in this state and* (1) the purchaser is the United States government or (2) *the taxpayer is not taxable in the state of the purchaser."* (Italics added.)

### 2. *Place of delivery versus destination*

The first issue in contention is the determination of whether aircraft which are manufactured for use out of California, but are delivered to the purchaser in California by MDC are included within section 25135, subdivision (a) as property "delivered or shipped to a purchaser, . . . within this state."

MDC argued, and the trial court agreed, that the emphasis in the statute should be placed on the words "purchaser . . . within this state" and therefore the statute should be interpreted to exclude from section 25135, subdivision (a), and hence from inclusion in the sales factor, sales from aircraft delivered in California, but destined for use in other states, since the purchaser is not "within this state." The Board, however, argues that the statute should be read to include property "delivered or shipped . . . within this state" regardless of the location of the purchaser or ultimate destination of the goods (the destination rule).

The parties agree that no California case has addressed this issue. In support of its position, the Board relies on Legal Ruling No. 348, Cal. Tax Reports (CCH) ¶ 204-903 (Feb. 21, 1973) p. 14,416, and its own administrative regulations. MDC, on the other hand, argues that we should follow published opinions from other states which construe identical or substantially similar legislation in a manner contrary to the position taken by the Board.

Legal Ruling No. 348 provides, in pertinent part: "It is apparent that delivery may occur without shipment, or as a lesser included part of shipment. Thus, if the purchaser comes into the state of the vendor to pick up the goods, there is no shipment on the part of the vendor, only a delivery to the purchaser. However, if the vendor uses its own carriers, or common carriers, to transport the goods to the purchaser, there is a shipment (including delivery) to the purchaser. If either the delivery without shipment occurs within California, or the shipment is to a purchaser within California, then there is a California sale with the meaning of Section 25135 (a). . . . [¶] . . . 'delivered' means the place at which the purchaser takes possession and

control of property, and 'shipped' means the transportation of the property (including delivery) to the purchaser. Consequently the phrase 'delivered . . . to a purchaser . . . within the state' refers to the state in which the purchaser takes possession of the property." (Legal Ruling No. 348, Cal. Tax Reports (CCH) ¶ 204-903, *supra*, at p. 14,417.)

The Board's own regulations provide that "Property is delivered or shipped to a purchaser within this state if the shipment terminates in this state, even though the property is subsequently transferred by the purchaser to another state." (Cal. Code Regs., tit. 18, § 25135, subd. (a)(3).)[3]

MDC, on the other hand, provides us with numerous opinions from various jurisdictions, which reach precisely the opposite result; i.e., that delivery to a purchaser in California is not considered a sale within California if the goods are ultimately destined for use in another state.

In *Department of Revenue* v. *Parker Banana Co.* (Fla. 1980) 391 So.2d 762, language from a Florida statute virtually identical to section 25135 was construed in determining the taxability of sales of bananas which were picked up in Florida by out-of state purchasers. By referring to legislative intent, the Florida Court of Appeal held that the language "within this state" referred to the state of the purchaser and not the state of delivery. (391 So.2d at p. 763.)

In *Pabst Brewing Co.* v. *Wis. Dept. of Revenue* (1986) 130 Wis.2d 291 [387 N.W.2d 121], the Wisconsin Court of Appeals addressed the identical issue with reference to a statute identical to section 25135, and concluded that legislative intent mandated the conclusion that "within this state" refers to the location of the purchaser and not the place of delivery. (387 N.W.2d at p. 123.)

In *Olympia Brewing Co.* v. *Com'r of Revenue* (Minn. 1982) 326 N.W.2d 642, the same issue was addressed by the Supreme Court of Minnesota with reference to a virtually identical Minnesota statute. That court also held that the taxability of sales picked up by out-of-state purchasers was not determined by the place of delivery. The court indicated that a destination rule would provide a substantial incentive to in-state export firms. It also found that any increased burden in record keeping resulting from the application of a destination rule was not a sufficient basis to overcome the stated purpose

---

[3]This regulation was apparently adopted following the drafting of uniform regulations for UDITPA by the National Association of Tax Administration, which was adopted by the Multistate Tax Commission as well as California.

of the statute, that is, to recognize the contribution of the consumer's or purchaser's state. (*Id.* at pp. 647-648.)

In *Lone Star Steel Co.* v. *Dolan* (Colo. 1983) 668 P.2d 916, a statute identical to section 25135 was interpreted with respect to pipe which was manufactured and delivered in Texas, but then wrapped in Colorado and shipped to a purchaser outside Colorado. The Supreme Court of Colorado held there was no Colorado sale for income tax purposes. In so holding, the court relied on the reasoning of a law review article, which explained that, "Manufacturing states probably would prefer a system attributing sales to the place from which goods are shipped in every case. However, the national conference was of the opinion that such a system would merely duplicate the property and payroll factors which emphasize the activity of the manufacturing state, so that there would tend to be a duplication by such a sales factor. Moreover, it is believed that the contribution of the consumer states toward the production of the income should be recognized by attributing the sales to those states. . . .' Pierce, *The Uniform Division of Income for State Tax Purposes*, 35 Taxes 747, 780 (1957)." (668 P.2d at p. 920.)

In *Dupps Co.* v. *Lindley* (1980) 62 Ohio St.2d 305 [16 Ohio App.3d 354, 405 N.E.2d 716], the taxing statute at issue did not contain the same language as section 25135, but it was nevertheless held by the Supreme Court of Ohio that the test for considering a sale within the state is where the goods were "ultimately received." (405 N.E.2d at p. 718.)

In *Texaco, Inc.* v. *Groppo* (1990) 215 Conn. 134 [574 A.2d 1293], the Supreme Court of Connecticut held, in deciding the taxability of petroleum products delivered out of state, that "the uniform holding of courts in other states interpreting essentially identical language has been that the destination of goods, and not their delivery point is dispositive. [Citations.]" (*Id.* at p. 1297.)

In *Strickland* v. *Patcraft Mills, Inc.* (1983) 251 Ga. 43 [302 S.E.2d 544], the destination rule was also applied by the Supreme Court of Georgia in determining the taxability of carpet picked up at the seller's Georgia office but taken out-of-state for resale. (*Id.* at p. 545.)

The Board attempts to distinguish each of these cases not only because of differences in each state's statute, but on a factual basis. The Board also argues that the adoption of a destination rule results in an administrative nightmare because of the difficulty in proving up the destination of each item sold.

We are therefore faced with a decision between administrative rulings and regulations promulgated by the Board and published case law in other

jurisdictions.[4] ■ While we recognize the administrative regulations and rulings are entitled to great weight, we also recognize that revenue rulings are simply administrative opinions. (*Container Corp. of America* v. *Franchise Tax Bd.* (1981) 117 Cal.App.3d 988, 1000, affd. (1983) 463 U.S. 159 [77 L.Ed.2d 545, 103 S.Ct. 2933].) ■ Moreover, the cases cited by MDC construe statutes identical or substantially similar to section 25135, and thus the cases are not distinguishable.

In addition to being contrary to the rule adopted by several other states, an adoption of the rule urged by the Board would run completely against the primary purpose of UDITPA, that is to ensure uniformity among the states in taxation matters.[5]

UDITPA has been interpreted to provide that "sales of tangible personal property should be apportioned to the state or county of destination, provided the taxpayer is subject to tax in such state or country. If the taxpayer is not subject to tax in the state or country of destination, the sales are apportioned to the state or country from which shipped." (Keesling & Warner, *California's Uniform Division of Income for Tax Purposes Act* (1968) 15 UCLA L.Rev. 655, 671.) In UDITPA, "the drafters . . . made a deliberate policy decision to recognize the contribution of the 'consumer' states to the production of income by allocating sales to those states that produce the buyer." (Reich, *Dock Sales—The New State Income Tax Battleground* (1982) 1 J. St. Taxation 42, 43.)

Moreover, as the Minnesota Supreme Court noted, "administrative ease, while a legitimate concern, does not justify an interpretation of a statute which is inconsistent with its purpose (here, to recognize the contribution of the consumer's or purchaser's state). [Citation.]" (*Olympia Brewing Co.* v. *Com'r of Revenue, supra*, 326 N.W.2d at p. 648.)

For these reasons, we find the trial court correctly applied the "destination" rule rather than the "place of delivery" rule in computing the amount of California sales made by MDC.

---

[4] We also note that the Board's position has not been uniformly followed in California administrative rulings. In *Appeal of Union Carbide Corporation* (Cal. Tax Reports (CCH) ¶ 400-813 (Apr. 5, 1984) p. 23,211), the State Board of Equalization ruled that "[s]ales of tangible personal property are ordinarily assigned to the state of the destination of the goods (the destination rule). (Rev. & Tax. Code, § 25135, subd. (a).)" (*Id.* at p. 23,212.)

[5] While the Board's expert witness testified that California's legislative history differed from that of the states which adopted the destination rule, we were not provided with any of this history, nor can we discern why one state's legislative reasons for adopting a uniform act would differ from the stated purpose of the act.

### 3. *MDC's cross-appeal for attorney fees*

MDC argues that it was entitled to attorney fees not only because the legal position of the Board at trial was incorrect, but because the Board refused to stipulate to certain facts and cooperate in discovery matters, necessitating a full-scale trial. MDC, however, conceded that the dispute "involved bona fide legal issues that the parties were unable to resolve, for which a court determination was necessary."

MDC was billed, and presumably paid, over $277,000 in attorney fees for this matter. A declaration from one of its attorneys claimed that $110,387.50 in attorney fees and approximately $3,700 in expert witness fees were incurred because of the failure of the Board to stipulate to certain facts.[6]

The Board's opposition to MDC's motion claimed that the Board had offered to stipulate to certain facts and sought to narrow and clarify the issues for trial, but was often rebuffed by MDC. A declaration from the Board's trial counsel, Michael Clancy, stated that MDC would not respond to discovery requests which sought evidentiary support for the facts which it requested the Board to stipulate to, but instead interposed numerous evidentiary objections. Clancy also claimed that MDC records were not sufficient to support their factual assertions, that meetings between counsel to resolve these issues did take place, and that the Board was not unwilling to stipulate to these facts, but was unable to. He also asserted that MDC's difficulty in gathering the facts was part of the Board's argument that the destination rule was an administratively unworkable one, and moreover, many of the travel expenses incurred by MDC's trial counsel were unwarranted.

The trial court denied MDC's motion. There is no reporter's transcript of the hearing.

Revenue and Taxation Code section 26491 provides that a party who brings a civil proceeding against the state to recover franchise taxes may recover its attorney fees if the following requirements are met: (1) the suit is brought in a California court; (2) the party has exhausted its administrative remedies under the bank and corporation tax laws; (3) the position of the state was not substantially justified; and (4) the party substantially prevails. Here, the only item in dispute appears to be whether the state's position was substantially justified.

There is no California case law directly construing the provisions of section 26491, but similar language in another section of the Revenue and

---

[6]MDC's motion also argued that the award should not be limited by the $75 per hour ceiling prescribed by former section 26491, subdivision (c)(1)(B)(iii).

Taxation Code was recently reviewed in *Tetra Pak, Inc.* v. *State Bd. of Equalization* (1991) 234 Cal.App.3d 1751 [286 Cal.Rptr. 529]. At issue in *Tetra Pak* was Revenue and Taxation Code section 7156, which awards attorney fees to taxpayers that have prevailed in tax-related litigation where the state's position was not "substantially justified."[7] Tetra Pak, the taxpayer, had contested an administrative determination that it owed additional use taxes for machinery it had leased. The trial court determined that Tetra Pak did not owe those taxes, but denied its request for attorney fees. On appeal, it was held that although Tetra Pak had prevailed, the trial court did not exceed the bounds of reason, and that "the possibility of any inference favorable to the trial court's ruling cannot be entirely eliminated." (234 Cal.App.3d at p. 1764.)

Several federal cases have discussed the meaning of the term "substantially justified" in other attorney fee award statutes. The phrase has been defined as "justified to a degree that would satisfy a reasonable person" or as a position that has a " 'reasonable basis both in law and fact.' " (*Pierce* v. *Underwood* (1988) 487 U.S. 552, 565 [101 L.Ed.2d 490, 504-505, 108 S.Ct. 2541]; *Utu Utu Gwaitu Paiute Tribe* v. *Dept. of Interior* (E.D.Cal. 1991) 773 F.Supp. 1383, 1385.)

A position that is substantially justified, however, is not necessarily a prevailing position. (*Phillips* v. *C.I.R.* (D.C. Cir. 1988) 851 F.2d 1492, 1499 [271 App.D.C. 265, 101 A.L.R.Fed. 685]; *Spriggs* v. *U.S.* (E.D.Va. 1987) 660 F.Supp. 789, 793 [issue of first impression in that circuit and while position was incorrect, it was not unreasonable].)

Upon review of a trial court's decision that the government's position is substantially justified, the appellate court utilizes an abuse of discretion standard. (*Pierce* v. *Underwood, supra,* 487 U.S. at pp. 559-563 [101 L.Ed.2d at pp. 500-503].)

Here, while MDC has ultimately prevailed in its position regarding the determination of the sales factor, we cannot say that the Board's position

---

[7]Section 7156 provides, in language nearly identical to section 26491, that "(a) In the case of any civil proceeding which is [¶] (1) Brought by or against the State of California in connection with the determination, collection, or refund of any tax, interest, or penalty . . . , and [¶] (2) Brought in a court of record of this state, the prevailing party may be awarded a judgment for reasonable litigation costs incurred in that proceeding. [¶] . . . [¶] (c) For purposes of this section [¶] . . . [¶] (2)(A) The term 'prevailing party' means any party to any proceeding described in subdivision (a) . . . which [¶] (i) Establishes that the position of the State of California in the civil proceeding was not substantially justified, and [¶] (ii) (I) Has substantially prevailed with respect to the amount in controversy, or [¶] (II) Has substantially prevailed with respect to the most significant issue or set of issues presented."

was not substantially justified, especially in light of the existence of prior legal rulings and the complexity of the matter. (*Phillips* v. *C.I.R.*, *supra*, 851 F.2d at p. 1499.) We find no abuse of discretion by the trial court in denying MDC's motion for attorney fees.

DISPOSITION

The judgment is affirmed. As to MDC's cross-appeal, the judgment is affirmed.

Each party is to bear its own costs on appeal.

Epstein, Acting P. J., and Klein (Brett), J.,* concurred.

A petition for a rehearing was denied August 8, 1994, and the petition of appellant Franchise Tax Board for review by the Supreme Court was denied November 3, 1994. Mosk, J., was of the opinion that the petition should be granted.

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.