**REVENUE CABINET, Commonwealth of Kentucky, Appellant,**

v.

**ROHM AND HAAS KENTUCKY, INC., Appellee.**

No. 95–CA–2861–MR.

Court of Appeals of Kentucky.

Sept. 20, 1996.

Kenton L. Ball, Frankfort, for Appellant.

Joseph L. Ardery, Christa Foster Crawford, Louisville, for Appellee.

Before GUDGEL, HUDDLESTON and SCHRODER, JJ.

## OPINION

GUDGEL, Judge.

This is an appeal from a judgment entered by the Franklin Circuit Court in an appeal from the Kentucky Board of Tax Appeals (KBTA). The court adjudged that the KBTA erred by finding that certain "dock sales" of products by appellee Rohm and Haas of Kentucky, Inc. (taxpayer) to its nonresident parent, Rohm and Haas Company, Inc. (parent), which products were delivered to the parent in Kentucky and shipped to other states on trucks provided by the parent, should be assigned as Kentucky sales for purposes of determining the taxpayer's liability for Kentucky corporate income taxes. On appeal, appellant Revenue Cabinet, Commonwealth of Kentucky (cabinet) contends that the court erred (1) by relying upon evidence which is not in the record in determining that the applicable statutes, KRS 136.070(3)(d)(1) and KRS 141.120(8)(c)(1), are ambiguous, (2) by finding that the KBTA erred by concluding that the "dock sales" at issue were properly apportioned to the taxpayer's Kentucky income as having been made within this state, and (3) by failing to find that the taxpayer's position is factually incorrect and legally unsupported. We disagree with all of the cabinet's contentions. Hence, we affirm.

Because the facts of this matter were stipulated by the parties and are well known to them, they need not be recited in detail herein. Briefly, however, we note that the taxpayer, a wholly-owned subsidiary of the parent, has its tax situs in Louisville. The taxpayer manufactures certain products which, for income tax purposes, are statutorily classified as tangible personal property. For the purposes of this appeal, all of these products in question are sold to the nonresident parent, are picked up at the taxpayer's docks in the parent's own trucks, and are shipped to customers and locations outside of Kentucky.

This dispute arises from the fact that the cabinet takes the position that, for purposes of KRS 136.070(3)(d)1 and KRS 141.120(8)(c)1, the taxpayer's sales to its parent constitute sales of tangible property within this state when the parent's own trucks are used to ship the products out of state. These statutes provide that a sale of tangible personal property is deemed to be in this state if "[t]he property is delivered or shipped to a purchaser, other than the United States government, or to the designee of the purchaser within this state regardless of the f.o.b. point or other conditions of the sale." KRS 136.070(3)(d)1 and KRS 141.120(8)(c)1. The parties in essence agree that, as drafted, the statute presents a narrow issue of statutory construction, i.e. whether the statutory phrase "within this state" modifies the word "delivered" or the word "purchaser." If the phrase modifies the word "delivered" as the cabinet contends, the dock sales involved herein are Kentucky sales for purposes of the corporate income tax statutes because they involved in-state deliveries. On the other hand, if the phrase "within this state" modifies the word "purchaser" as the taxpayer contends, then the dock sales are not Kentucky sales for purposes of the corporate income tax statutes since the products were delivered or shipped to an out-of-state purchaser.

KRS 136.070(3)(d)1 and KRS 141.120(8)(c)1 are, with one exception, copied verbatim from Section 16(a) of the Uniform Division of Income for Tax Purposes Act (UDITPA).[1]

1. Our legislature added the phrase "or to the    designee of the purchaser" to the pertinent lan-

Fortunately for our analysis, the pertinent language of this uniform statute has previously been interpreted by appellate courts in several other jurisdictions.

In the first such case, *Department of Revenue v. Parker Banana Co.*, 391 So.2d 762 (Fla.App.1980), a Florida taxpayer imported bananas and sold some of them to out-of-state wholesalers, shipping them either by common carriers or by trucks owned or rented by the wholesalers. As in Kentucky, Florida's applicable statute is copied from Section 16(a) of the UDITPA. In concluding that the sales to out-of-state wholesalers who picked up bananas dockside other than by common carrier were not sales for Florida corporate income tax purposes, the appellate court stated as follows:

> In the phrase "property delivered or shipped to a purchaser within this state" to what do the words "within this state" refer? That is the simple question which confronts us, and neither party has cited to us any authority which specifically addresses that question. Our own extensive research has produced none.
>
> The Department reaches its position in this case by applying the words "within this state" to the word "delivered." The Department contends that those out-of-state purchasers from Parker Banana who arrange to pick up their bananas other than by common carrier take delivery as a matter of law at dockside in Tampa. Therefore, says the Department, in each such case there is a delivery within this state and the sale is within this state.
>
> We disagree with the Department's construction of the statute. In our view, the words "within this state" must refer to the word "purchaser" if the legislative intent is observed. Under our construction of the apportionment statute, a sale is in this state if the sale is to a Florida purchaser and that, in turn, depends on the destination of the goods sold. It matters not whether delivery or shipment occurs in Florida or out of Florida. Our interpretation of the statute accords with the legisla-

tive intent to assign to Florida for tax purposes a portion of net income attributable to sales by the taxpayer *in the Florida market* as determined by the destination of the goods.

*Id.* at 763.

Next, in *Olympia Brewing Co. v. Commissioner of Revenue*, 326 N.W.2d 642 (Minn. 1982), the Minnesota Supreme Court held that beer sold by a Minnesota brewery, and picked up dockside by out-of-state distributor-purchasers in their own trucks for sale outside Minnesota, were not sales within the state for purposes of apportioning liability for state income taxes. In reaching that conclusion, the court stated:

> C. To sum up, neither the legislative history nor the uniform act specifically resolves the question of how dock pickup sales should be treated but they tend to support the view that such sales are not "within this state." Certain practical considerations decide the issue conclusively.
>
> 1. We believe the fatal weakness in the commissioner's position is his inability to justify treating differently a sale where the out-of-state distributor picks up the goods in his own trucks from a sale where the same distributor has a common or contract truck carrier pick up the goods at the same dock, f.o.b. seller's place of business. True, the statute says the f.o.b. point or other conditions of sale should not be considered; nonetheless, the anomaly which inheres in the commissioner's argument makes such a consideration necessary. Assume the commissioner's position to be correct: that "within this state" modifies "delivered or shipped" so that the triggering event is the purchaser's taking physical possession within Minnesota. When delivery is made f.o.b. seller's place of business, physical delivery is tendered within Minnesota to the same extent as for a dock pickup sale. The buyer in an f.o.b. seller's place-of-business transaction in effect takes delivery through his agent, the carrier. Yet the commissioner concedes that an f.o.b. seller transaction is an out-of-state

guage of the uniform statute. However, this amendment of the uniform statute is not relevant

to the issues before us in this appeal.

sale where a common or contract carrier is used. This result makes the selection of mode of transportation dispositive, which, as even the commissioner concedes, would be contrary to the statutory language.

We think that to distinguish between a sale within or without the state on the basis of the mode of transportation—whose truck does the transporting—is an untenable distinction. It is not in keeping with the general policies of the 1973 amendment. Further, there is nothing in the legislative history, regulations, articles of commentators or case law that compels the interpretation of the statute as urged by the commissioner.

*Id.* at 647.

Next, in *Pabst Brewing Co. v. Wisconsin Department of Revenue,* 130 Wis.2d 291, 387 N.W.2d 121 (Wis.App.1986), the Wisconsin court reached the same conclusion as the Minnesota court on substantially similar facts, although for different reasons. In *Pabst,* as in *Olympia,* a brewer sought to treat sales of beer to out-of-state wholesalers, who picked up the beer dockside at the brewery in their own trucks, as not being sales within the state for income tax liability apportionment purposes. The court held in favor of the brewer, stating as follows:

We conclude sec. 71.07(2)(c)2, Stats. ambiguously treats out-of-state purchasers. Two reasonable readings are possible. The phrase "within this state" may be read to modify "delivered or shipped." That reading makes the purchaser's physical possession of the product in Wisconsin the condition for a Wisconsin sale. The department and commission read the statute that way to conclude that Pabst's sales to out-of-state wholesalers who pick up the product in Milwaukee are sales "in this state." Alternatively, the phrase "within this state" may be read to modify "purchaser" rather than "delivered or shipped." If that is the reading, the purchaser's business location controls. Pabst argued and the circuit court accepted this position.

. . . .

We conclude that the legislature intends "within this state" to modify "purchaser." Section 71.07(2)(c)2, Stats., provides that

whether a sale occurs in this state is unaffected by "f.o.b. point or other conditions of the sale." The legislature's intent regarding the effect of those two factors is beyond dispute. Yet the department's approach makes a condition of the sale, the method of delivery, the central factor when determining Wisconsin sales, notwithstanding the contrary legislative intent expressed in sec. 71.07(2)(c)2. We therefore conclude that the location of the purchaser controls. That out-of-state wholesalers pick up Pabst's beer in Wisconsin rather than having it delivered is therefore immaterial. The department incorrectly relied on this distinction to impose additional franchise tax on Pabst.

387 N.W.2d at 122–23.

Recently, in *McDonnell Douglas Corporation v. Franchise Tax Board,* 26 Cal.App.4th 1789, 33 Cal.Rptr.2d 129 (1994), a California appellate court held that sales of aircraft, which were delivered in California to purchasers although they were destined for out-of-state use, were not sales within the state for purposes of calculating franchise taxes due. In reaching this conclusion the court noted:

The Board attempts to distinguish each of these cases not only because of differences in each state's statute, but on a factual basis. The Board also argues that the adoption of a destination rule results in an administrative nightmare because of the difficulty in proving up the destination of each item sold.

. . . .

In addition to being contrary to the rule adopted by several other states, an adoption of the rule urged by the Board would run completely against the primary purpose of UDITPA, that is to ensure uniformity among the states in taxation matters.

UDITPA has been interpreted to provide that "sales of tangible personal property should be apportioned to the state or county of destination, provided the taxpayer is subject to tax in such state or country. If the taxpayer is not subject to tax in the state or country of destination, the sales are apportioned to the state or coun-

try from which shipped." (Keesling & Warner, California's Uniform Division of Income for Tax Purposes Act (1968) 15 U.C.L.A. L.Rev. 655, 671.) In UDITPA, "the drafters ... made a deliberate policy decision to recognize the contribution of the 'consumer' states to the production of income by allocating sales to those states that produce the buyer." (Reich, Dock Sales—The New State Income Tax Battleground (1982) 1 J.St.Taxation 42, 43.) 33 Cal.Rptr.2d at 132–33. Moreover, several other courts which have interpreted statutes patterned after Section 16(a) of the UDITPA have also reached similar conclusions. *See, e.g. Lone Star Steel Co. v. Dolan*, 668 P.2d 916 (Colo.1983); *Texaco, Inc. v. Groppo*, 215 Conn. 134, 574 A.2d 1293 (1990); *Strickland v. Patcraft Mills, Inc.*, 251 Ga. 43, 302 S.E.2d 544 (1983).

As is made clear by a review of the foregoing authorities, those courts which have had opportunities to address the issue have adopted a "destination" rather than a "place of delivery" rule when interpreting statutory language like that set out in Section 16(a) of the UDITPA. Although we have considered the cabinet's arguments, we fail to perceive any valid reason why Kentucky, when interpreting the applicable Kentucky statutes, should adopt a minority view which is inconsistent with the destination rule uniformly adopted by other states. As noted by the California court, if we adopted the minority view we would undermine the UDITPA's purpose of ensuring uniformity among the states in taxation matters. This we decline to do, especially since we find that the cabinet's arguments in support of its contentions are far from compelling. Indeed, the cabinet cites no relevant or controlling authorities to support its position. In fact, its argument that an expired Kentucky regulation supports its position is specious, given the fact that the factual example set forth in subsection (4) of the regulation emphasizes that the key factor to be considered when determining whether a sale to a purchaser is within this state is whether the purchaser's permanent facility is located in this state, rather than whether the property is to be delivered to customers in this state.

Finally, we also note that there is no merit to the cabinet's argument that a "crucial" difference exists between the instant proceeding and the cases from other jurisdictions which are adverse to its position. In fact, contrary to the cabinet's contention, the cases which the taxpayer relies upon involve facts which are essentially the same as, rather than distinguishable from, those in the instant action. Moreover, while these decisions are not binding upon us, we certainly may embrace and apply their reasoning to the matter now before us. Further, the mere fact that some of the cited decisions from other jurisdictions rely upon documents which set out their own legislatures' intentions in adopting the UDITPA does not in any way impede our interpretation of the applicable Kentucky statutes, as obviously our legislature would not knowingly enact statutes patterned after a uniform act if those statutes were intended to be interpreted inconsistently with the accepted interpretation of the uniform act by other states.

For the reasons stated, the court's judgment is affirmed.

All concur.