**SWIFT CANADIAN CO., Limited,**
Appellant,

v.

**Albert BANET, Sali Banet and Abraham L. Perlman (Also Known as Abe Perlman), Individually and Trading as Keystone Wool Pullers.**

No. 11538.

United States Court of Appeals
Third Circuit.

Argued May 5, 1955.

Decided June 23, 1955.

Rehearing Denied Aug. 3, 1955.

Ballard, Spahr, Andrews & Ingersoll, Richardson Blair, Philadelphia, Pa. (Robert L. Bast, Philadelphia, Pa., on the brief), for appellant.

Robert S. Grodinsky, Philadelphia, Pa. (Manuel Sidkoff, Philadelphia, Pa., on the brief), for appellees.

Before GOODRICH and HASTIE, Circuit Judges, and MILLER, District Judge.

GOODRICH, Circuit Judge.

This is an action on the part of a seller of goods to recover against the buyer for breach of contract. In the trial court each party, following the filing of a stipulation of facts, moved for summary judgment. The court granted the motion of the defendant. Plaintiff here says that it should have had the summary judgment or, at the worst, that the case should be remanded for trial on the facts.

The one point presented is both interesting and elusive. The seller is a Canadian corporation. It entered into an agreement with defendant buyers who do business as Keystone Wool Pullers in Philadelphia. By this contract Keystone agreed to purchase a quantity of lamb pelts at a stipulated price. Part of the quantity was delivered on board railroad cars at Toronto and shipped to Keystone in Philadelphia. On or about March 12, 1952, Swift advised Keystone of its readiness to deliver the remaining pelts to the buyer on board railroad cars in Toronto for shipment to Philadelphia. The parties have stipulated that on or about that day the government of the United States by its agency, the Bureau of Animal Industry, had issued stricter regulations for the importation of lamb pelts into the United States. The parties have stipulated that "pursuant to these regulations, the importation into the United States of these lamb pelts by Keystone was prevented." They have also stipulated that for the reasons just stated Keystone then and thereafter refused to accept delivery of the pelts and the load-ing and shipment of the car did not occur.

From an inspection of the contract made between the parties it appears that the seller agreed to sell the pelts:

"all at $3.80 each U. S. Funds
F. O. B. Toronto."

Below this an approximate time was stipulated for shipment and then there were shipping directions in the following form:

"Note ................. Frankford
Via: Buffalo-Penna. R. R. to
~~Broad & Washington Ave.~~
Freight Sta. Penna. R. R. Delivery."

Following this appears the terms and method of payment.

Two additional conditions of sale should be stated. There was a provision that neither party is to be liable for "orders or acts of any government or governmental agency . . ." And there was a provision that "when pelts are sold F.O.B. seller's plant title and risk of loss shall pass to buyer when product is loaded on cars at seller's plant."

■■ The one question in this case is the legal effect of this agreement between the parties. If the seller's obligation was performed when it delivered, or offered to deliver, the pelts to the railroad company in Toronto, we think it is entitled to recovery. If the seller did fulfill its obligation, when it did so deliver, of course it is clear that when it failed to load the pelts because the buyer had signified his refusal to accept them, the seller may assert the same rights as though he had loaded them. A party is not obligated to do the vain thing of performing, assuming that he is ready to perform, when the other party has given notice of refusal to accept performance. 3 Williston on Sales, § 586 (Rev. ed., 1948); Restatement, Contracts, §§ 280, 306; Leonard Seed Co. v. Lustig Burgerhoff Co., 1923, 81 Pa. Super. 499. See also Uniform Commercial Code, § 2–610(c); Pa.Stat.Ann. tit. 12A, § 2–610(c) (1954).

The argument for the buyer must rest on the fact that the shipping directions in the contract showed that what the parties had in mind was such kind of performance by the seller as would start the goods to the buyer in Philadelphia. This, coupled with the stipulation that, in consequence of the stiffening of federal regulations, "the importation into the United States of these lamb pelts by Keystone was prevented," forms the basis for the argument that the carrying out of the agreement was prevented by governmental agency and the buyer is therefore excused.

The validity of this argument depends upon what effect we give to a provision for shipment of the goods to the buyer via Pennsylvania R. R., destination Philadelphia. We do not think that this is any more than a shipping direction which the buyer could have changed to any other destination in the world had it so desired. Suppose the buyer had found that it wanted the goods in New York, could it not have directed such a change in destination without any violation of the contract? Could the seller have insisted that it would ship to Philadelphia and nowhere else? We think that authority in general regards these shipping directions as simply inserted for the convenience of the buyer and subject to change by him. Dwight v. Eckert, 1888, 117 Pa. 490, 12 A. 32.; Hocking v. Hamilton, 1893, 158 Pa. 107, 27 A. 836; Richter v. Zoccoli, 1930, 150 A. 1, 8 N.J.Misc. 289; 1 & 2 Williston on Sales, §§ 190, 457 (Rev. ed., 1948). See also Uniform Commercial Code, § 2–319(3); Pa.Stat. Ann. tit. 12A, § 2–319(3) (1954).

If the contract in this case had called for performance "F.O.B. seller's plant" a provision of the contract itself would clearly have indicated when the seller's responsibility was finished and the buyer's had begun.[1] Here the provision in the earlier part of the contract was simply "F.O.B. Toronto" and it was not specifically provided that the sale was delivery at the seller's plant. We think the provision shows what the parties means by "F.O.B." and can see no difference, so far as this expressed meaning goes, between F.O.B. at seller's plant and F.O.B. Toronto.

The general rule on this subject is pretty clear. Williston points out that when goods are delivered "free on board" pursuant to contract the presumption is that the property passes thereupon. Williston on Sales, § 280(b) (Rev. ed., 1948). It is agreed that this is a presumption and that the phrase F.O.B. is not one of iron-clad meaning. Seabrook Farms Co. v. Commodity Credit Corp., 206 F. 2d 93 (C.A. 3, 1953). There is nothing in this case, however, to counteract the effect of such a presumption. When the shipper had made his delivery he was to send bill of lading and draft through a Philadelphia bank. His part of the agreement would have been fully performed when the goods were delivered F.O.B. at Toronto. We think both the risk of loss and the possibility of profit if the market advanced, were in the buyer from then on. Even if the goods could not be imported into the United States under the then existing regulations, the rest of the world was free to the buyer, so far as we know, as destination for the shipment. If he did not care to accept them under the circumstances and his expectation of a profitable transaction was disappointed, nevertheless, the seller having performed or being ready, able and willing to perform, was entitled to the value of his bargain.

This case involves no federal question. It is one of local law. But both Pennsylvania and Ontario were governed at the time of these transactions by statutes identical as to this point. Pa.Stat.Ann. tit. 69, § 143 (1931) (Uniform Sales Act, § 19); 4 Rev.Stat. of Ontario, pp. 507, 513 (1950) (Sale of Goods Act, § 19). The dispute between the parties, however, is not on any general proposition of the law of sales but on the application of that law to their particular

---

1. See the second additional condition of sale quoted in the text above.

agreement. State cases are helpful in indicating the way other courts have dealt with similar problems. In this connection we think it relevant to cite: Hatcher v. Ferguson, 1921, 33 Idaho 639, 198 P. 680, 16 A.L.R. 590; Krauter v. Menchacatorre, Sup.Ct., 1922, 202 App. Div. 200, 195 N.Y.S. 361; Baetjer v. New England Alcohol Co., 1946, 319 Mass. 592, 66 N.E.2d 798.

No objection is raised to the method by which the seller disposed of the goods. The price at which the seller was to be paid is stipulated; likewise, the price at which he sold the goods at the Toronto market after the buyer's refusal to take them. There seems to be no dispute as to the amount of damages and no outstanding question of fact. The case is, therefore, a proper one for summary judgment.

The judgment of the district court will be reversed with instructions to enter judgment for the plaintiff for the difference between the contract price and the price at which the goods were sold.