## Commonwealth *v.* R. S. Noonan, Inc., Appellant.

412

Argued May 24, 1965. Before BELL, C. J., MUSMAN-NO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*W. William Anderson,* with him *Markowitz, Kagen & Griffith,* for appellant.

*George W. Keitel,* Deputy Attorney General, with him *Walter E. Alessandroni,* Attorney General, for Commonwealth, appellee.

OPINION BY MR. JUSTICE COHEN, October 25, 1965:

This is an appeal by R. S. Noonan, Inc. (Noonan) with regard to its Corporate Net Income Tax for the year ended September 30, 1957. Noonan is a Pennsylvania corporation engaged in a general building and construction business; it carries on this business in a number of states besides Pennsylvania.

For its fiscal year ended September 30, 1957, Noonan submitted its Corporate Net Income Tax Report and showed a tax of $2,058.62. This tax was computed by applying an allocating percentage of 76.9180% to allocable income of $42,097.16, by adding to the result of $32,380.29 thus obtained gain from the sale of assets situated in Pennsylvania amounting to $1,930.10, and by applying to this sum of $34,310.39 the applicable 6% tax rate.

In determining its allocating percentage of 76.9180%, Noonan reported the following three fractions:

| | | |
|---|---|---|
| Tangible property | $\dfrac{\$3,971,265.44}{4,844,422.98}$ = 81.976% | |
| Wages and Salaries | $\dfrac{622,620.70}{845,052.90}$ = 73.6783% | |
| Gross Receipts | $\dfrac{3,630,715.76}{4,834,525.02}$ = 75.0997% | |

| | |
|---|---|
| Total | 230.7540 |
| Divided by three | 76.918% |

The Commonwealth of Pennsylvania (Commonwealth) settled Noonan's Corporate Net Income Tax as it was reported by Noonan. However, within the allowed time, the Commonwealth made two resettlements of this tax, the first occasioned by a change in the Commonwealth's own determination that the tangible property fraction was incorrectly reported and settled and the second occasioned by Noonan's own report of a change in its net income as reported to the Federal Government. Since the change in net income is not a disputed matter, we can simply refer to the result of the other resettlement since it is from this that Noonan has appealed.

The Commonwealth determined that the tangible property fraction originally reported by Noonan had erroneously contained "work in process" in both the numerator and denominator. This item was, therefore, eliminated, leaving only building and equipment in the fraction. The fraction then became

$$\frac{99,238}{103,467} = 95.9127\%$$

and the application of this change in computing tax produced a new allocating percentage of 81.5636%. When applied to the changed net income, this new percentage resulted in Pennsylvania income of $39,521.21 and tax of $2,371.27.

Noonan petitioned the Board of Finance and Revenue for review of this resettlement but was refused. It then appealed to the Court of Common Pleas of Dauphin County. In connection with this appeal, the Commonwealth then notified Noonan that the Commonwealth also would contend that Noonan's wages and salaries fraction was incorrectly reported. This fraction had been reported by Noonan by allocating outside of Pennsylvania the wages paid to employees hired at and connected with the field offices maintained by Noonan at its job sites outside the Commonwealth. The Commonwealth contended that such offices did not qualify as outside offices maintained for "the general transaction of business" and that all wages and salaries should be allocated to Pennsylvania. The result of this 100% allocation would be a tax of $2,613.80.

The court below upheld the Commonwealth's contentions regarding both fractions and computed a tax of $2,613.80. Since Noonan had paid $2,371.27 of this amount, the court determined the amount due to be $242.53 plus interest at 6% from January 16, 1958, until the date of payment. Noonan then appealed to this Court. We have before us for determination, there-

fore, two questions, one regarding the tangible property fraction, the other regarding the wages and salaries fraction.

1. Briefly, Noonan contends that it should be permitted to include "work in process" (materials, labor and overhead expense) as part of its "inventory" and as tangible property in computing its tangible property allocation fraction. Its contention is based on two points: first, that such "work in process" is, in fact, tangible property and, second, that inclusion of "work in process" in the fraction produces a more reasonable method of allocation since it incorporates a ratio of costs concept into the allocation process.

Both the Commonwealth and the court below, however, point out that Noonan does not carry "work in process" as tangible property on its books or on its balance sheet, that under Noonan's contracts title to the work and materials passed to the person for whom the work was being done as it was paid for (monthly in each contract contained in the record), that materials incorporated into a building became part of the real estate and thus excluded from "tangible property" under the amendment of April 30, 1957, P. L. 80, to §2 of the Corporate Net Income Tax Act and that "work in process" included not only the cost of materials but also the cost of (intangible) labor and overhead.

The reference to the amending Act of 1957 (which excludes security interests in *personal property* from the first fraction and does not support the lower court's statement regarding Noonan's security interest in realty) is inappropriate here. However, we agree with the Commonwealth's and lower court's conclusion. The meaning of tangible property is not generally set forth in the Corporate Net Income Tax Act, Act of May 16, 1935, P. L. 208, as amended, 72 P.S. §§3420a-3420n; and we find no reason for giving the term anything other than its ordinary meaning. In this respect it has

been stated: "The determination of what constitutes tangible property of a corporation for purposes of allocation is governed by general rules of law. Land and buildings, machinery or equipment affixed to buildings, represent the most common types of tangible property. Similarly, moveable fixtures, equipment or machinery, autos or inventory of merchandise are clearly tangible property." Stradley and Krekstein, Corporate Taxation and Procedure in Pennsylvania, §161 (2d Ed. 1952).

The somewhat unusual situation which occurs in accounting for income and expenses of construction contractors may not be dealt with by the statute as precisely as we would like. However, it is clear that the statute intends a computation based on the value of *tangible* property to be made. Such value may, of course, include elements of cost which are non-tangible in nature (e.g., the value of a house is not just the value of the building materials incorporated into it); and in this respect we do not agree with the lower court's reference to the various elements of cost included in "work in process". If "work in process" is, in fact, tangible property, it is includible in the fraction (assuming it belongs to Noonan).

Noonan suggests in its brief that "work in process" is the same as "inventories" as the latter term is used in its balance sheet; and in the stipulation of facts contained in the record, it is noted that the Commonwealth does not agree that the elements of "work in process" are inventory in the usual sense. The record and arguments here, however, do not so deal with this problem as to permit a definite conclusion by us; and we cannot arrive at one under the circumstances. However, we need not remand the case on this issue because there remains another aspect to this point which is decisive.

Noonan's computation of the value of its tangible property, apart from the question of the elements of

"work in process", does not take into account the periodic payments made to it by the various persons for whom it carries on its construction activity. It treated as its property all unfinished construction even though it received monthly payments therefor. It recognized this discrepancy in its approach on its balance sheet where it carried as "inventories" (according to it) only the construction inventory unpaid for. We agree with the Commonwealth and lower court that, in any event, the amounts included by Noonan in the fraction do not accurately reflect *its* tangible property and absent any further convincing presentation of facts on this point by Noonan, we conclude that it has not met its burden of showing that the Commonwealth's computation of the tangible property fraction is incorrect.

2. On the wages and salaries issue, however, we agree with Noonan. The court below disallowed an allocation of wages and salaries on the ground that the field offices were not "premises for the transaction of business" as that phrase is used in the statute. There seems to be no question, however, that if these field offices do qualify as such premises under the statute, the employees whose wages and salaries are involved were chiefly situated at and connected with these outside premises.

The lower court relied on the case of *Commonwealth v. Rust Engineering Co.*, 55 Dauph. 434 (1944), to sustain its conclusion. However, the crux of the wages and salaries dispute in that case was whether the employees involved could be assigned to the taxpayer's out-of-state field offices since they were hired by the principal office in Pennsylvania and subject to the supervision of that principal office. Neither of these facts is true here. Furthermore, the change in the gross receipts fraction under the Corporate Net Income Tax Act made by the amending Act of April 11, 1945, P. L. 190, as a result of the *Rust Engineering* case did

not occur because of this wages and salaries allocation problem. It stemmed from the other issue in the case—the question of gross receipts allocation. Therefore, the *Rust Engineering* case is of no value as a precedent here.

We believe that the field offices maintained by Noonan were "premises for the transaction of business" as that term is used in the statute. The indication by the court below that they were not maintained for the "general" transaction of business is irrelevant since the word "general" is not used in the statute. We consider this omission appropriate for, as the facts here indicate, Noonan's employees were hired and supervised at and from the field office. It is just this type of connection, for one, that permits an out-of-state allocation of wages and salaries. Therefore, Noonan's wages and salaries fraction was correctly reported by it; and since it has paid the additional amount of tax resulting from resettlement of its tangible property fraction, there is no balance of tax owned by it.

The judgment of the court below is modified in accordance with this opinion and, as so modified, affirmed.