Paul D. HOPKINS, Petitioner,

v.

PUBLIC SCHOOL EMPLOYES'
RETIREMENT BOARD,
Respondent.

Commonwealth Court of Pennsylvania.

Argued Dec. 4, 1995.
Decided April 18, 1996.

Donna S. Weldon, for Petitioner.

Louis J. Sheehan, Assistant Counsel, for Respondent.

Before COLINS, President Judge,
SMITH, J., and KELTON, Senior Judge.

SMITH, Judge.

Paul D. Hopkins (Hopkins) petitions for review of an order of the Public School Employees' Retirement Board (Board) that denied his request to purchase retirement credit for service rendered as a teacher at the Delaware Department of Correction's Stevenson House, a juvenile detention center. The issue presented is whether Hopkins' service as a teacher of school-aged students in a youth detention center constitutes service in a "public educational institution" within the meaning of Section 8304(b)(3) of the Public

School Employees' Retirement Code (Code), *as amended,* 24 Pa.C.S. § 8304(b)(3).

Hopkins became an active member of the Public School Employees' Retirement System (PSERS) on September 1, 1963. In October 1970 Hopkins left the state and received a refund of his contributions from PSERS. Hopkins was next employed by the Woodbridge School District in Woodbridge, Delaware from September 1, 1970 to December 13, 1974. Hopkins was later employed as a teacher at Stevenson House, a juvenile detention center operated by the Delaware Department of Correction, from January 1975 through October 1979. Hopkins subsequently returned to Pennsylvania where he was employed by the Armstrong School District from September 1, 1979 until his retirement on September 1, 1993.

■ Hopkins was granted out-of-state service credit for the 4.40 years he was employed by the Woodbridge School District in Delaware. However, Hopkins' request for service credit for the time he was employed at Stevenson House was denied on the ground that the detention facility did not fall within the definition of a "public school." PSERS' Appeals Committee denied Hopkins' appeal on the ground that his service in the Delaware Department of Correction could not be considered service in a "public educational institution." After an administrative hearing, the hearing examiner issued a proposed report recommending that the Board deny Hopkins' request for credit. The Board issued a decision denying Hopkins' request to purchase credit for his service at Stevenson House on the ground that it was not a "public educational institution" within the meaning of Section 8304(b)(3) of the Code.[1]

Before this Court Hopkins contends that under the rules of statutory construction the term "public educational institution" in Sec-

tion 8304(b)(3) must be interpreted consistently with the definition of public education set forth by this Court in *Panko v. Public School Employees' Retirement System,* 89 Pa.Cmwlth. 419, 492 A.2d 805 (1985), while interpreting the phrase "in the field of public school education" included in Section 8304(b)(4) of the Code, 24 Pa.C.S. § 8304(b)(4).[2] There, the Court stated that "[p]ublic school education seeks to educate and advance children aged six to seventeen and to teach them to become responsible members of society." *Panko,* 492 A.2d at 808. Hopkins also contends that the Board erred by disregarding the plain meaning of the disjunctive conjunction "or" in the phrase "[s]ervice in any public school *or* public educational institution in any state other than this Commonwealth" in Section 8304(b)(3).

As the parties concede, the term "public educational institution" is not defined in the Code. Hopkins argues that the term "public education," when applied to the term "public educational institution" in Section 8304(b)(3), should be accorded the same meaning as it was in *Panko* when applied to the phrase "the field of public school education" in Section 8304(b)(4). Citing Section 1922 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922, Hopkins contends that to interpret "public education" as meaning something different, depending upon the subsection, would violate the basic principle of statutory construction that sections of a statute must be read together and construed with reference to the entire section. Therefore, according to Hopkins, an institution that provides public education is a "public educational institution" within the meaning of Section 8304(b)(3).

■ This Court, however, in *Barckley v. State Employes' Retirement Board,* 129 Pa. Cmwlth. 484, 566 A.2d 343 (1989), relied upon the rule in 1 Pa.C.S. § 1921(a) that statutes

---

1. This Court's scope of review of a Board's order is limited to determining whether the Board's necessary findings of fact are supported by substantial evidence, whether the Board committed an error of law or whether constitutional rights were violated. *Golebieski v. Public School Employees Retirement Board,* 161 Pa.Cmwlth. 127, 636 A.2d 268 (1993), *appeal denied,* 537 Pa. 635, 642 A.2d 488 (1994).

2. Under Section 8304(b)(4) nonschool service credit is limited to "[s]ervice as an administrator, teacher or instructor *in the field of public school education* for any agency or department of the government of the United States...."

must be interpreted to give effect to every word and phrase and stated that the term "public educational institution" must be construed separately from the phrase "in the field of public school education" as set forth in Section 8304(b)(4). In *Panko* a retired teacher attempted to purchase nonschool service for the time he was employed as a manual arts therapist at a Veterans Administration hospital. The Court affirmed the Board's denial of Panko's request on the ground that he was not engaged in the field of public school education. Because it deals with service requirements under Section 8304(b)(4), *Panko* is inapplicable to the present case. *Barckley*.

In applying the statutory construction rationale in *Barckley* to the language in Section 8304(b)(3), this Court must reach a different result from the Board. Section 8304(b)(3) limits nonschool service credit to "[s]ervice in any public school *or public educational institution* in any state...." (Emphasis added.) By using the word "or" the legislature intended to credit out-of-state service other than service in the public schools. Hopkins concedes that Stevenson House is a detention facility. Therefore, the issue in this case is whether Stevenson House qualifies under Section 8304(b)(3) as a public educational institution other than a public school.

The facts, as found by the Board, indicate that Hopkins was employed as the only teacher at Stevenson House; he was required to be certified as a teacher of socially and emotionally maladjusted students. This certification requirement was identical to that required to teach students in the Delaware public schools, and Hopkins' salary was determined by the Delaware Department of Instruction. Although paid and supervised by the Department of Correction, Hopkins received the identical salary that a teacher in the public school system with his education level would be paid. As a teacher at Stevenson House, Hopkins was eligible to become a member of the Delaware Education Association, the state teachers' union.[3]

Regarding the nature of the facility, Hopkins performed his teaching services in a single room where there were approximately 8–10 student-detainees, who varied in age from 8 to 18. Upon receipt of a new student, Hopkins would interview the student to determine his or her educational level; he would then go to the student's school to pick up books and materials supplied by the student's regular teachers. The average student's stay at Stevenson House was two weeks but could be longer in more serious cases. Upon adjudication, student-detainees are removed from Stevenson House.

Despite the teacher certification requirements necessary to teach at Stevenson House, the Board nonetheless found that it was not a "public educational institution" because it was not an institution dedicated to and organized around the provision of public education and that Hopkins was actually employed by the Department of Correction rather than the Department of Education. The Board further noted that only juveniles who had been arrested and were awaiting adjudication could take advantage of its programs and that these students were already enrolled in other schools or had lawfully opted to drop out.

■ The Board reasoned that the legislature intended to limit the purchase of this type of service credit to those with service at public educational institutions and not to those with service at an institution where education was only an incidental function. This Court finds the Board's interpretation of "public educational institution" to be impermissibly narrow. Under the Board's interpretation of Section 8304(b)(3), it is difficult to imagine what facility other than a public school would qualify as a public educational institution. To require that a public educational institution in fact also qualify as a public school essentially changes the "or" in Section 8304(b)(3) to an "and," thereby giving no effect to the term "public educational institution." *Barckley*.

---

3. The Board also found that in Pennsylvania, teachers of the educational programs in juvenile detention centers are employees of Intermediate Units and are financed through the state appropriation for special education.

 Although located in a detention facility, the main mission of Stevenson House is to maintain the education of students aged 8 to 18 while they await adjudication. Also, a primary function of Stevenson House is to make the students more responsible as citizens. In other words, Hopkins is a teacher and not a prison guard; his primary duties at Stevenson House were teaching duties, not guard duties. As a result, this Court concludes that Stevenson House qualifies as a "public educational institution" under Section 8304(b)(3). In view of this conclusion, the Court holds that the Board erred in denying Hopkins' request to purchase service credit for the time he was employed at Stevenson House. As a consequence, the order of the Board is reversed.

## ORDER

AND NOW, this 18th day of April, 1996, the order of the Public School Employees' Retirement Board is hereby reversed.