**BUCKEYE PIPELINE COMPANY,**
Petitioner,

v.

**COMMONWEALTH of Pennsylvania,**
Respondent.

Commonwealth Court of Pennsylvania.

Argued Sept. 9, 1996.
Decided Feb. 19, 1997.

George T. Bell, Harrisburg, for petitioner.

Kevin A. Moury, Deputy Attorney General, Harrisburg, for respondent.

Before SMITH and FLAHERTY, JJ., and NARICK, Senior Judge.

## OPINION

FLAHERTY, Judge.

Buckeye Pipeline Company (Buckeye) petitions for review from an order of the Board of Finance and Revenue (Board) which refused to resettle Buckeye's 1988 Corporate Net Income Tax (CNIT).

The parties stipulated to the following facts. Buckeye is a Delaware Corporation which is qualified to do business in Pennsylvania. During the tax year in question, 1988, Buckeye owned a one-percent interest, as the general partner, in four limited partnerships. The sole business of these limited partnerships involved the transportation of petroleum products through 3,500 miles of pipeline situated in ten states, including Pennsylvania. None of these limited partnerships had employees; Buckeye provided complete operational management. Additionally, Buckeye provided complete operational management to Laurel Pipeline Company (Laurel), a pipeline corporation. Buckeye has written agreements with the four limited partnerships and Laurel regarding Buckeye's total responsibility for operations and management.

Buckeye is the successor to another corporation (Old Buckeye). Old Buckeye owned its own pipelines through which it transported petroleum products. Moreover, Old Buckeye provided management services as well as operated the pipelines of other companies. In 1986, these other companies were reorganized into the limited partnerships mentioned above, and the employees of Old Buckeye and another company were transferred to Buckeye.

Buckeye's only function is the operation and management of the limited partnerships and Laurel. Pursuant to Section 401(3)2. of the Tax Reform Code of 1971 (Code),[1] Buckeye is entitled to an apportionment because it has taxable business income in other states. Buckeye reported its 1988 CNIT as $12,675 using the single-factor method based on revenue barrel miles.[2] The Commonwealth set-

tled Buckeye's CNIT at $28,013 based upon an apportionment percentage that was calculated by using the standard three-factor method of apportionment.[3] Buckeye filed for a resettlement and the Board refused. This appeal followed.

■ The issue in this case of first impression is whether Buckeye is a "pipeline compan[y]" and, therefore, entitled to apportion its taxable income by use of the revenue barrel miles method pursuant to Section 401(3)2.(c)(1) of the Code. In appeals from the Board of Finance and Revenue, we have the broadest scope of review because the Commonwealth Court functions as a trial court even though such cases are heard in our appellate jurisdiction. *Norris v. Commonwealth*, 155 Pa.Cmwlth. 423, 625 A.2d 179, 182 (1993).

1. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7401(3)2. This section provides the following:

> In case the entire business of any corporation, other than a corporation engaged in doing business as a regulated investment company as defined by the Internal Revenue Code of 1954, as amended, is not transacted within this Commonwealth, the tax imposed by this article shall be based upon such portion of the taxable income of such corporation for the fiscal or calendar year, as defined in subclause 1 hereof. . . .

2. Section 401(3)2.(c)(1) of the Code, 72 P.S. § 7401(3)2.(c)(1). This section provides the following:

> (c) Pipeline or Natural Gas Companies.
> (1) All business income of pipeline companies shall be apportioned to this Commonwealth by multiplying the income by a fraction, the numerator of which is the revenue ton miles, revenue barrel miles or revenue cubic feet miles within this Commonwealth during the tax period and the denominator of which is the total revenue ton miles, revenue barrel mils or revenue cubic feet miles of the taxpayer everywhere during the tax period. For purposes of this paragraph a revenue ton mile, revenue barrel mile or a revenue cubic foot mile shall mean respectively the receipts derived from the transportation by the taxpayer of one ton of solid property, one barrel of liquid property or one cubic foot of gaseous property transported one mile.

3. Section 401(3)2.(a) of the Code, 72 P.S. § 7401(3)2.(a). This section provides, in pertinent part, the following:

> (a) Division of income.
> . . . .

(9)(A) Except as provided in subparagraph (B), all business income shall be apportioned to this State by multiplying the income by a fraction, the numerator of which is the property factor plus the payroll factor plus twice the sales factor, and the denominator of which is four.

(B) For purposes of apportionment of the capital stock-franchise tax as provided in section 602 of Article VI of this Act, the apportionment fraction shall be the property factor plus the payroll factor plus the sales factor as the numerator, and the denominator shall be three.

(10) The property factor is a fraction, the numerator of which is the average value of the taxpayer's real and tangible personal property owned or rented and used in this State during the tax period and the denominator of which is the average value of all the taxpayer's real and tangible personal property owned or rented and used during the tax period but shall not include the security interest of any corporation as seller or lessor in personal property sold or leased under a conditional sale, bailment lease, chattel mortgage or other contract providing for the retention of a lien or title as security for the sales price of the property.

. . . .

(13) The payroll factor is a fraction, the numerator of which is the total amount paid in this State during the tax period by the taxpayer for compensation and the denominator of which is the total compensation paid everywhere during the tax period.

. . . .

(15) The sales factor is a fraction, the numerator of which is the total sales of the taxpayer in this State during the tax period, and the denominator of which is the total sales of the taxpayer everywhere during the tax period.

Foreign corporations qualified to conduct business in the Commonwealth of Pennsylvania are entitled to have their tax liability fairly apportioned in a manner that represents the commercial activity within the Commonwealth and does not burden interstate commerce. In *Complete Auto Transit, Inc. v. Brady,* 430 U.S. 274, 97 S.Ct. 1076, 51 L.Ed.2d 326 (1977), the Supreme Court held that a state may tax a business association for the privilege of conducting business within its borders without running afoul of the United States Constitution if the tax complies with the following four factors: (1) the activity taxed has a substantial nexus to the taxing state; (2) the tax is fairly apportioned; (3) the tax does not discriminate against interstate commerce; and (4) it is fairly related to the services provided by the state. *Id.* at 279, 97 S.Ct. at 1079.

Section 401(3)2. of the Code provides that "[i]n case the entire business of any corporation ... is not transacted within this Commonwealth," 72 P.S. § 7401(3)2., the general rule is that the corporation shall apportion the amount of income generated by transactions within the Commonwealth and calculate its tax liability by multiplying the corporation's total net income by an apportionment percentage which is the average of three statutory fractions (three-factor method). 72 P.S. § 7401(3)2.(a). These three fractions represent the ratio of business activity in Pennsylvania to the total business activity of a corporation for sales, property, and payroll. *Id.* Depending on the nature of a business, a corporation may qualify for one of three exceptions to the three-factor method. In the instant case, the relevant exception is represented by a single fraction and provides the following:

> (c) Pipeline or Natural Gas Companies.
>
> (1) All business income of *pipeline companies* shall be apportioned to this Commonwealth by multiplying the income by a fraction....

72 P.S. § 7401(3)2.(c)(1) (emphasis added).

Buckeye argues that it is a pipeline company and should have its apportioned Pennsylvania CNIT calculated according to the revenue barrel mile method provided in Section 401(3)2.(c)(1) of the Code instead of the three-factor method. Buckeye maintains that as the general partner in a limited partnership, it is fully responsible and liable for the pipeline operations. Buckeye's employees are responsible for operating and maintaining all receiving and delivery terminals, pumping stations, and petroleum products. In return, the partnerships reimburse Buckeye for all costs and expenses associated with operating the pipelines in Pennsylvania and also pay a flat management fee to Buckeye pursuant to management agreements. Although the partnerships own almost all of the assets and pipelines, these management agreements grant Buckeye broad authority to do anything it deems appropriate and necessary for the operation and maintenance of the pipelines.

The Commonwealth maintains that, by Buckeye's own admission, it is a management company authorized to maintain and operate the pipelines for a management fee, and Buckeye's federal income tax return admits that Buckeye is a management company. The Commonwealth further argues that the term "pipeline compan[y]" requires ownership of the pipelines in order for a company's income to be related to the amount of product transported through the pipeline, and therefore have its CNIT calculated by the single-factor method.

Depending on whether the product is a solid, liquid, or gas, the single factor used in determining CNIT will be determined by either revenue ton miles, revenue barrel miles, or revenue cubic foot miles respectively. Buckeye's business involves the transportation of liquid petroleum products. Thus, Buckeye seeks to have its CNIT apportioned according to a factor determined by the revenue barrel miles method. The General Assembly has defined these terms in the following manner:

> For purposes of this paragraph a revenue ton mile, revenue barrel mile or a revenue cubic foot mile shall mean respectively the receipts derived from the transportation by the taxpayer of one ton of solid property, one barrel of liquid property or one cubic foot of gaseous property transported one mile.

§ 7401(3)2.(c)(1). The Commonwealth argues that, in contrast to the above provision,

Buckeye does not earn revenues based on the amount of liquid petroleum that it transports through the partnerships' pipelines.

█ Section 1903(a) of the Statutory Construction Act of 1972 provides that, "words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this part shall be construed according to such peculiar and appropriate meaning or definition." 1 Pa.C.S. § 1903(a). Where the language of a statute is clear, words and phrases contained in the statute must be construed in accordance with their common and accepted usage. *MacElree v. Chester County*, 667 A.2d 1188, 1191 (Pa.Cmwlth.1995). Where the statute is not entirely free from ambiguity, we must apply the rules of the Statutory Construction Act. *Id.*

█ The language employed by the General Assembly in Section 401(3)2.(c)(1) to define a revenue barrel mile is unambiguous and maintains its common and accepted usage. The dictionary meaning of the term "derive" is "to take or receive from a source; to acquire, get, or draw." Webster's Third New International Dictionary 608 (1966). In this regard, if Buckeye's receipts were in some manner received or drawn from the amount of petroleum transported through the pipelines in Pennsylvania, it would qualify for calculating its CNIT under the single-factor apportion method. However, Buckeye received reimbursement for costs and expenses for operating and maintaining the pipeline while also receiving a fixed management fee. Neither the reimbursement nor the fixed management fees are dependent upon or relative to the amount of petroleum transported through the pipelines. Only the partnerships' gross receipts are actually re-

lated to the amount of petroleum transported through the pipelines. Accordingly, most of Buckeye's tax liability cannot be calculated under the revenue barrel mile method because, except for approximately 1.4%, its gross receipts have no relationship to the amount of petroleum products that were transported.

█ However, we also disagree with the Commonwealth's contention that ownership of the pipelines is the only way to qualify for the revenue barrel mile method of apportioning CNIT. The statute does not expressly or impliedly require ownership of the pipelines. If Buckeye's management agreement provided that Buckeye were to receive payment based on the amount of petroleum that was transported through the partnerships' pipelines, this would qualify under the statute as "the receipts derived from the transportation by the taxpayer" of petroleum for purposes of Section 401(3)2.(c)(1) of the Code, thereby qualifying Buckeye for revenue barrel mile treatment even though there is no cognizable ownership interest. A company does not have to be characterized as only a pipeline company or only a management company; it can be both. A corporation will be a pipeline company to the extent that its receipts are derived from or affected by the amount of petroleum it transports through the pipelines to the extent that those receipts can be apportioned according to the revenue barrel mile method for purposes of calculating CNIT. Receipts not derived from or affected by the amount of petroleum transported through the pipelines will be apportioned under the three-factor method.

The following analogy will illustrate the point. There is a comparable exception to the three-factor method for calculating CNIT in Section 401(3)2.(b) which similarly permits trucking, airline, and railroad companies to apportion their CNIT using one fraction that represents the ratio of revenue miles in Pennsylvania to the total revenue miles of the company, except when both people and property are transported.[4] Revenue miles

---

4. Section 401(3)2.(b)(1) of the Code, 72 P.S. § 7401(3)2.(b)(1). This section provides the following:

    (b) Railroad, Truck, Bus or Airline Companies.
      (1) all business income of railroad, truck, bus or airline companies shall be apportioned to this Commonwealth by multiplying the income by a fraction, the numerator of which is

the taxpayer's total revenue miles within this Commonwealth during the tax period and the denominator of which is the total revenue miles of the taxpayer everywhere during the tax period. For purposes of this paragraph revenue mile shall mean the average receipts derived from the transportation by the taxpayer of persons or property one mile. Where

are the "average receipts derived from the transportation of persons or property one mile." *Id.* Again, the receipts must derive from and be affected by the transportation of persons or property.

No one would contest that a company that leases its entire fleet of trucks and receives revenue directly from the transportation of goods is a trucking company; yet the company does not own a single vehicle of transportation. If the trucking company leased all of its trucks, derived its revenues from transporting goods, yet hired a management company to drive and otherwise operate the trucks, the trucking company would still qualify for single-factor apportionment, as it derives its revenues from transporting goods. However, the management company that operates the vehicles would not qualify for single-factor apportionment because their receipts derive from the trucking company and not from transporting goods.

■ In the instant case, Buckeye is a management company that derives 98.6% of its revenue from the partnerships for operating the pipelines not for the amount of petroleum that it transports. In determining whether a company qualifies for single-factor apportionment, the requisite nexus between a transportation company and its vehicles of transportation is defined by the manner in which the company receives its revenues and not by ownership.

We conclude that both the right to use or control the pipelines, as a vehicle of transportation, and the receipt of earnings that have been derived from the amount of petroleum transported through those pipelines qualifies a corporation as a pipeline company within the meaning of Section 401(3)2.(c)(1). Therefore, Buckeye is not a pipeline company for purposes of calculating the apportionment of 98.6% of its receipts, and it cannot use the revenue barrel mile method to calculate its apportioned CNIT for that portion of its gross receipts.

Buckeye also argues that, under the Board's own regulations, it has an ownership

revenue miles are derived from the transportation of both persons and property, the revenue mile fractions attributable to each such class of transportation shall be computed separately, and the average of the two fractions weighted

interest in the pipelines qualifying it for the single factor apportionment treatment. The pertinent code section provides the following:

> When a taxpayer has an interest in a partnership, joint venture, association or other unincorporated enterprise ..., the amount of its distributive share of partnership income shall be determined in accordance with the IRC. The taxpayer's interest in the partnership shall, for purposes of Commonwealth corporate taxation, be considered a direct interest in the assets of the partnership rather than an intangible interest. Accordingly, the taxpayer's share of the partnership's payroll, property and sales ... shall be included in the apportionment factors of the taxpayer unless otherwise excluded by this section.

61 Pa.Code § 151.29(a)(1). This code section provides that, for purposes of calculating CNIT for a taxpayer with an interest in a partnership, the taxpayer is deemed to have a direct interest in the assets of the partnership. However, that interest is only equal to its distributive share. Although the partnerships' gross receipts are derived from transporting petroleum products through the pipelines, Buckeye's distributive share of these gross receipts only amounts to approximately 1.0% of the partnerships which translates into 1.4% of Buckeye's receipts. Buckeye, therefore, is entitled to have 1.4% of its receipts apportioned according to the single-factor method because this 1.4% of Buckeye's receipts derive from the transportation of petroleum.

Additionally, Section 401(3)2.(a)(18) of the Code, 72 P.S. § 7401(3)2.(a)(18), outlines fairness and equity principles to be applied in individual cases and provides the following:

> If the allocation and apportionment provisions of this definition do not fairly represent the extent of the taxpayer's business activity in this State, the taxpayer may petition the Secretary of Revenue or the Secretary of Revenue may require, in respect to all or any part of the taxpayer's business activity:

in accordance with the ratio of total receipts from each such class of transportation everywhere to total receipts from both such classes of transportation everywhere, shall be used in apportioning income to this Commonwealth.

. . . .

(D) The employment of any other method to effectuate an equitable allocation and apportionment of the taxpayer's income. In determining the fairness of any allocation or apportionment, the Secretary of Revenue may give consideration to the taxpayer's previous reporting and its consistency with the requested relief.

*Id.* The Commonwealth concedes in its brief that applying the three-factor method of apportionment to all of Buckeye's receipts would not fairly represent Buckeye's business activity in Pennsylvania. Based on this provision, the revenue barrel mile method of apportionment should apply to the 1.4% of Buckeye's receipts that derive from transporting petroleum products through pipelines to "effectuate" an equitable allocation and apportionment of Buckeye's income.

We, therefore, hold that Buckeye is a pipeline company for 1.4% of its gross receipts, which are derived from transporting petroleum, and is entitled to have that amount apportioned according to the revenue barrel mile method. Buckeye is not a pipeline company for the remaining 98.6% of its gross receipts and must, therefore, apportion that amount according to the three-factor method.

Accordingly, we find in favor of the Commonwealth. The Chief Clerk is directed to enter judgment unless exceptions are filed within thirty (30) days.

### ORDER

AND NOW, this 19th day of February, 1997, the Chief Clerk is directed to enter judgment for the Commonwealth, and we remand to the Board of Finance and Revenue to calculate the Buckeye Pipeline Company's 1988 Corporate Net Income Tax liability to the Commonwealth by apportioning 98.6% of Buckeye's receipts under the three-factor method and 1.4% of its receipts under the revenue barrel mile method. This order shall be final unless exceptions are filed within thirty (30) days.

Jurisdiction is hereby relinquished.