**GILMOUR MANUFACTURING COMPANY, Petitioner,**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 9, 1998.
Decided May 1, 2000.

---

Joseph C. Bright and Kevin J. Moody, Philadelphia, for petitioner.

Carol L. Weitzel, Harrisburg, for respondent.

Before DOYLE, President Judge, and COLINS, J., McGINLEY, J., SMITH, J., PELLEGRINI, J., KELLEY, J., and FLAHERTY, J.

DOYLE, President Judge.

Before the Court en banc are the exceptions of Gilmour Manufacturing (Gilmour) to the September 1, 1998 order of this Court affirming the decision of the Board of Finance and Revenue (Board), which denied Gilmour's petition for a partial refund of its 1991 corporate net income (CNI) tax. As this Court's initial opinion [1] pointed out, the sole issue presented is whether Gilmour's sales to out-of-state purchasers who pick the products up in Pennsylvania and ultimately sell them outside the state should be included in the calculation of its CNI tax.

Gilmour is a Pennsylvania corporation which manufactures lawn and garden products at its facility in Somerset, Pennsylvania, and sells its products throughout the United States. Although Gilmour generally ships its products to the purchasers through common carriers and pays the freight charges for the shipping, some purchasers find it more convenient to pick up the products from Gilmour's loading dock in Pennsylvania rather than having them shipped. Gilmour refers to transactions in

---

1. *Gilmour Manufacturing Company v. Commonwealth of Pennsylvania,* 717 A.2d 619 (Pa. Cmwlth.1998).

which the customer picks up the product as "dock sales," and Gilmour provides a freight allowance to its dock-sale customers. Some of Gilmour's dock-sale customers come into Pennsylvania from out of state to pick up the products and immediately take the products outside Pennsylvania for resale. These transactions are at the heart of the case presently before the Court.

Pursuant to Section 401 of the Tax Reform Code of 1971 [2] (Tax Reform Code), if a company does not transact all of its business within the Commonwealth, the company is entitled to apportion its tax liability based upon the relationship of its total business to that transacted within the Commonwealth.[3] In 1991, Gilmour was entitled to such an apportionment because not all of its sales were in Pennsylvania. In its timely filed tax return, Gilmour excluded from the numerator of the sales factor, i.e., that portion of the factor which represents all sales within the Commonwealth, all dock sales to out-of-state purchasers, approximately $2,385,362. The Department settled Gilmour's 1991 CNI tax by including the dock sales to out-of-state purchasers as in-state sales.

After Gilmour paid the tax as settled by the Commonwealth, it filed a petition for a refund seeking $17,912, the amount of tax attributed to dock sales to out-of-state purchasers; the Board denied the petition, and Gilmour appealed to this Court, asserting that the Department of Revenue's regulations, which did not adopt a destination test, were inconsistent with the Tax Reform Code.

On September 1, 1998, this Court issued an order affirming the decision of the Board and entering judgment in favor of the Commonwealth. Specifically, this Court concluded that the Department's regulations tracked the intent of the Tax Reform Code and were, therefore, valid, and we rejected case law from other jurisdictions interpreting similar provisions of their revenue codes. These exceptions to the September 1, 1998 order followed.

In its exceptions, Gilmour argues that: (1) every state that has examined similar or identical statutory language has concluded that dock sales to out-of-state purchasers are excluded from the sales factor; (2) the Department's regulation is not entitled to deference because the interpretation of the statute at issue is a question of law; and (3) the Pennsylvania statute establishes a destination test as a matter of law.

Gilmour's exceptions present us with an issue of first impression, the proper construction of Section 401(3)2(a)(16) of the Tax Reform Code, which provides:

> Sales of tangible personal property are in this State if the property is delivered or shipped to a purchaser, within this State regardless of the f.o.b.[4] point or other considerations of the sale.

72 P.S. § 7401(3)2(a)(16) (footnote added).

Although, as noted above, the Courts of this Commonwealth have not had occasion to examine this section of the Tax Reform Code, there are two sources of available guidance to ascertain the proper construction of the statute. The first source is the regulations promulgated by the Department of Revenue. Specifically, 61 Pa.Code § 153.26 provides as follows:

> (b) *Sales of tangible personal property.* The following sales factors shall apply to the sale of tangible personal property.
>
> *(1) When sales of tangible personal property are in this Commonwealth.* Sales of tangible personal property are in this Commonwealth if the property is delivered or shipped to a pur-

---

**2.** Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 7101–10004.

**3.** There are three factors which are utilized to determine the total amount of apportioned tax due: the property factor, the sales factor, and the payroll factor. Section 401 of the Tax Reform Code, 72 P.S. § 7401. The sales factor is the only factor at issue in this case.

**4.** "F.o.b." is short for "free on board."

chaser within this Commonwealth regardless of the f.o.b. point or other conditions of the sale....

*(2) General rule.* Sales of tangible personal property are in the state in which delivery to the purchaser occurs.

*Example:* A taxpayer produces beer in New York. Taxpayer sells the beer to a distributor located in this Commonwealth. Distributor sends its truck into New York to taxpayer's plant to pick up the beer and brings the beer back to its Commonwealth business location. Delivery has occurred in New York and these taxpayer's sales are in New York.

(3) *Definitions.* The following words and terms, when used in this chapter, have the following meanings, unless the context clearly indicates otherwise:

(i) *Delivered*—The physical transfer of possession of tangible personal property to the purchaser.

(ii) *Purchaser*—The term includes the following:

(A) The ultimate recipient of the property if the taxpayer, at the designation of the purchaser, delivers property in this Commonwealth to the ultimate recipient.

*Example:* A taxpayer in this Commonwealth sold merchandise to a purchaser in New York. Taxpayer directed the manufacturer of the merchandise in Ohio to ship the merchandise to the purchaser's customer in this Commonwealth under purchaser's instructions. The sale by the taxpayer is in this Commonwealth.

Of course, the Department's construction of Section 401 is entitled to deference, unless the Court determines that it violates the legislative intent of the statute or is unwise. *See Philadelphia Suburban Corp. v. Board of Finance and Revenue,* 535 Pa. 298, 635 A.2d 116 (1993). The validity of this regulation, however, depends upon this Court's conclusion that the regulation tracks the meaning of the statute. *Girard School District v. Pittenger,* 481 Pa. 91, 392 A.2d 261 (1978). Based upon this regulation which the Department has promulgated, it argues that Gilmour's dock sales are clearly classified as sales within the Commonwealth under 61 Pa. Code § 153.26 and, therefore, were properly allocated to the numerator of the sales factor.

The second source of guidance as to the proper construction of Section 401(3)2(a)(16), and the one relied upon by Gilmour, is cases from other jurisdictions which have interpreted identical or similar language. In *Olympia Brewing Company v. Commissioner of Revenue,* 326 N.W.2d 642 (Minn.1982), a brewing company disputed the inclusion in its in-state sales of sales to out-of-state distributors who came into Minnesota to pick up the beer in their own trucks. The statute at issue provided as follows:

(b) Sales of tangible personal property are made within this state if the property is received by a purchaser at a point within this state, and the taxpayer is taxable in this state, regardless of the f.o.b. point, other conditions of the sale, or the ultimate destination of the property.

Minn.Stat. § 290.191(1)(b). Like the Commonwealth in the present case, the commissioner in *Olympia Brewing* argued that the proper reading of the statute required that

if the goods are "delivered or shipped ... within this state," it is a sale within this state, and here the out-of-state distributor obviously takes delivery and possession of the beer within Minnesota, to be precise, at Olympia's Minnesota loading dock.

*Olympia Brewing,* 326 N.W.2d at 644. The Minnesota Supreme Court noted that this construction of the statute establishes a distinction between products that an out-of-state distributor picks up using its own truck and products that the same distribu-

tor receives from the supplier via common carrier. Specifically, the Court concluded:

> We believe the fatal weakness in the commissioner's position is his inability to justify treating differently a sale where the out-of-state distributor picks up the goods in his own trucks from a sale where the same distributor has a common or contract truck carrier pick up the goods at the same dock, f.o.b. seller's place of business. True, the statute says the f.o.b. point or other conditions of sale should not be considered; nonetheless, the anomaly which inheres in the commissioner's argument makes such a consideration necessary. Assume the commissioner's position to be correct: that "within this state" modifies "delivered or shipped" so that the triggering event is the purchaser's taking physical possession within Minnesota. When delivery is made f.o.b. seller's place of business, physical delivery is tendered within Minnesota to the same extent as for a dock pickup sale. The buyer in an f.o.b. seller's place-of-business transaction in effect takes delivery through his agent, the carrier. Yet the commissioner concedes that an f.o.b. seller transaction is an out-of-state sale where a common or contract carrier is used. This result makes the selection of mode of transportation dispositive, which, as even the commissioner concedes, would be contrary to the statutory language.
>
> We think that to distinguish between a sale within or without the state on the basis of the mode of transportation—whose truck does the transporting—is an untenable distinction. It is not in keeping with the general policies of the

1973 amendment. Further, there is nothing in the legislative history, regulations, articles of commentators or case law that compels the interpretation of the statute as urged by the commissioner.

*Id.* at 647. Similar results were reached in other jurisdictions which examined this issue involving similar or identical statutes. *See, e.g., McDonnell Douglas Corporation v. Franchise Tax Board,* 26 Cal.App.4th 1789, 33 Cal.Rptr.2d 129 (1994); *Texaco, Inc. v. Groppo,* 215 Conn. 134, 574 A.2d 1293 (1990); *Florida Department of Revenue v. Parker Banana Co.,* 391 So.2d 762 (Fla.App.1980); *Pabst Brewing Co. v. Wisconsin Department of Revenue,* 130 Wis.2d 291, 387 N.W.2d 121 (1986), *review denied,* 130 Wis.2d 544, 391 N.W.2d 209 (1986). Although we are not bound by the holdings of any of the cases which Gilmour cites, we do find them to be persuasive and instructive on the issue.[5]

▇▇▇ Likewise, in the present case, we are troubled by the Commonwealth's inability to provide a practical reason for the distinction between tangible personal property that is shipped and tangible personal property that is received by the purchaser. In its brief, the Commonwealth asserts that

> [c]learly, when a non-resident comes into Pennsylvania to purchase at retail, the sale is subject to sales tax in Pennsylvania. The focus is on where possession of the tangible personal property is transferred to the purchaser and not on the residence of the purchaser or where the purchaser intends to take the property.

(Commonwealth's brief at 17.) As noted in *Olympia Brewing,* if the property is

---

5. In its brief, the Commonwealth correctly points out that some of the cases to which Gilmour cited involved the Uniform Division of Income for Tax Purposes Act (UDITPA). The Commonwealth further notes that Pennsylvania has not adopted UDITPA in its entirety. Although the Commonwealth is correct in this respect, we find this fact to be of little consequence, as it appears clear to us that the Commonwealth has taken the lan-

guage at issue here nearly verbatim from the Uniform Act. Therefore, we believe that we may properly consider constructions of the same or similar language from other jurisdictions. *See* Section 1927 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1927 ("Statutes uniform with those of other states shall be interpreted and construed to effect their general purpose to make uniform the laws of those states which enact them").

shipped f.o.b. dockside, delivery occurs when the seller places the property on its docks for pick up by a common carrier who, in essence, receives the goods as an agent of the buyer. Conversely, if the product is delivered f.o.b. buyer's place of business, outside of the Commonwealth, the sale is not within the Commonwealth. Therefore, if the Commonwealth is correct in its construction of the statute, as expressed in its regulation, then sales of property are treated differently depending on the f.o.b. point. The statute, however, specifically provides that the f.o.b. point is *not* a consideration. It is an elementary principle of statutory construction that we are to presume that the General Assembly intended that all words of a statute are intended to have meaning and are not mere surplusage. *See Hopkins v. Public School Employes' Retirement Board,* 674 A.2d 1197 (Pa.Cmwlth.1996). The Commonwealth's regulation reads the phrase "regardless of the f.o.b. point" out of the statute. Therefore, because the Commonwealth's interpretation, both as argued in its brief and contained in 61 Pa.Code § 153.26, is inconsistent with 72 P.S. § 7401(3)2(a)(16), we must reject it and conclude that the phrase "in this state," as it is used in 72 P.S. § 7401(3)2(a)(16) modifies "purchasers" and applies to *both* deliveries and shipments of tangible personal property. To rephrase our holding, we deem Section 401(3)2(a)(16) of the Tax Reform Code should be read without the misplaced comma, as follows:

> Sales of tangible personal property are in this State if the property is delivered or shipped to a purchaser[ ] within this State regardless of the f.o.b. point or other considerations of the sale.

72 P.S. § 7401(3)2(a)(16). Likewise, if the sale is to a purchaser who is or which is not *within* the Commonwealth, it is not a sale "in this state," regardless of the f.o.b. point or other considerations of sale. Accordingly, Gilmour's dock-sales to out-of-state purchasers were not properly included as Pennsylvania sales.

■ Further support for this conclusion is found in the purpose of the CNI itself. As Courts have noted, the tax is designed to measure the amount of commercial activity that an entity engages in during a given year and tax it accordingly. *See Buckeye Pipeline Co. v. Commonwealth,* 689 A.2d 366 (Pa.Cmwlth.1997). As the *Olympia Brewing* Court noted, statutes permitting a corporation to apportion its sales for purposes of the CNI are designed to represent the contribution of various consumers and purchasers to the entity's overall sales. Specifically, in Pennsylvania, the numerator of the sales factor represents the contribution of Pennsylvania consumers and purchasers to the entity's sales, while the denominator represents the contribution of all consumers and purchasers. Accordingly, including in a corporation's Pennsylvania sales transactions out-of-state purchasers who come into the Commonwealth, pick-up a product and leave the Commonwealth, as the Commonwealth argues, artificially inflates the contribution of Pennsylvania consumers and purchasers to the entity's sales.

■ Finally, we note that, in its brief, the Commonwealth posits that utilizing Gilmour's construction of the statute would create a difficult, perhaps impossible, task of tracking where products end up once they leave the Commonwealth. Although we agree that the potential exists for such problems, such a burden would not rest on the Commonwealth. It is well settled that the burden of proving error in the Commonwealth's settlement of an entity's corporate net income tax liability or in the computation of tangible personal property fraction is on the taxpayer. *Commonwealth v. R.S. Noonan,* 419 Pa. 411, 213 A.2d 787 (1965). Therefore, the Commonwealth may continue to assert initially that products received in Pennsylvania are Pennsylvania sales for purposes of the CNI, and the entity will have the ability to demonstrate through shipping records or other evidence that the tangible personal property was taken outside of the Com-

monwealth for resale in another jurisdiction.

## ORDER

**NOW,** May 1, 2000, the exceptions of Gilmour Manufacturing Company in the above-captioned matter are granted. The panel decision of this court in *Gilmour Manufacturing Company v. Commonwealth of Pennsylvania,* 717 A.2d 619 (Pa. Cmwlth.1998) is vacated, and the order of the Board of Finance and Revenue is reversed.

Judgment is entered on behalf of Gilmour Manufacturing Company in the amount of $17,912 plus interest.

SMITH, Judge, dissenting.

I dissent from the majority's decision to grant the exceptions filed by Gilmour Manufacturing Company to this Court's September 1, 1998 order affirming a decision of the Board of Finance and Revenue (Board). This Court denied Gilmour's petition for a refund of $17,912, representing a portion of its 1991 corporate net income (CNI) tax. The sole inquiry in this matter is whether Gilmour's 1991 CNI tax should be calculated by including sales made to purchasers who are not located in Pennsylvania but who take delivery of their purchased property at Gilmour's loading dock in Pennsylvania and transport it outside of Pennsylvania. Because the majority has overlooked or ignored fundamental principles of statutory construction, I am compelled to dissent.

For purposes of calculating Pennsylvania CNI tax, any corporation that does not transact its entire business within Pennsylvania is entitled to apportionment, as Gilmour was here, of its taxable income according to the applicable method set forth in Section 401(3)2(a)–(d) of the Tax Reform Code of 1971 (Tax Code), Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. § 7401(3)2(a)–(d). The method used by Gilmour required Gilmour to calculate its sales factor, which is a fraction. The num-

erator is the taxpayer's total sales in Pennsylvania during the tax period, and the denominator is the taxpayer's total sales everywhere during the same period. Section 401(3)2(a)(15) of the Tax Code, 72 P.S. § 7401(3)2(a)(15); *Hellertown Mfg. Co. v. Commonwealth,* 480 Pa. 358, 390 A.2d 732 (1978).

Gilmour's challenge is to a regulation of the Department of Revenue which reasonably interpreted the relevant section of the Tax Code, 61 Pa.Code § 153.26(b)(2). The regulation provides: "Sales of tangible personal property are in the state in which delivery to the purchaser occurs." The parties stipulated that Gilmour's products constitute tangible personal property, but Gilmour argues that the regulation is inconsistent with Section 401(3)2(a)(16) of the Tax Code, 72 P.S. § 7401(3)2(a)(16). That section provides as follows: "Sales of tangible personal property are in this State if the property is *delivered or shipped* to a *purchaser, within this State* regardless of the f.o.b. point or other conditions of the sale." (Emphasis added.) I disagree with Gilmour's assertion and the majority's conclusion that the language "within this State" must be interpreted to modify the word "purchaser" rather than the words "delivered or shipped" as the Department correctly asserts. Gilmour maintains that any other interpretation would contravene the remainder of the statutory directive that attribution should be determined "regardless of the f.o.b. point or other conditions of sale" and thus render the regulation inconsistent with the statute.

This Court should bear in mind that the Department's regulation represents an exercise of its interpretive rule-making authority. Section 408(a) of the Tax Code, 72 P.S. § 7408(a); *see also Philadelphia Suburban Corp. v. Board of Finance and Revenue,* 535 Pa. 298, 635 A.2d 116 (1993). While courts traditionally accord some deference to the interpretation of a statute by an agency charged with administration of the statute, the meaning of a statute is

essentially a question of law for the court to decide. *Pennsylvania Human Relations Commission v. Uniontown Area School Dist.*, 455 Pa. 52, 313 A.2d 156 (1973). Courts are free to disregard an agency's interpretative regulation only when convinced that it is unwise or violative of legislative intent. *Id.*

Gilmour contends that the purpose of the sales factor in the calculation for Pennsylvania CNI tax is to reflect the purchaser's location, and Gilmour and the majority rely on *Olympia Brewing Co. v. Commissioner of Revenue*, 326 N.W.2d 642 (Minn. 1982), to support this position. However, *Olympia Brewing* is neither controlling nor persuasive. In that case the Minnesota Supreme Court determined that the statutory language of a provision similar but not identical to the Tax Code provision at issue here was ambiguous. The court resolved the issue by considering practical concerns but did not, as Gilmour initially contended, adopt the "destination" test. It determined instead that the shipment and delivery terminates for Minnesota tax purposes once it is determined where the initial purchaser is located. *Id.*[1]

The majority also erred in accepting Gilmour's argument that the statutory provision in question is derived from the Uniform Division of Income For Tax Purposes Act (UDITPA), 7A (Part I) U.L.A. 356 (1999), originally adopted in 1957, and that the provision implements the rule that sales of tangible personal property should be apportioned to the state or country of destination, as opposed to delivery, so long as the taxpayer is subject to tax in the state or country of destination. Gilmour asserts that to effectuate the purposes of the UDITPA of uniformity in state taxation laws, the challenged statutory provision should be interpreted consistently with those of other states. This argument lacks merit because other states have not interpreted similar tax provisions in a uniform way. *Compare Department of Revenue of Florida v. Parker Banana Co.*, 391 So.2d 762 (Fla.Dist.Ct.App.1980); *Olympia Brewing*. An analysis of cases cited by Gilmour from other jurisdictions also demonstrates that the states involved in those cases have adopted the UDITPA or that the modifier "in this state" was explicitly attached to particular words.[2]

The most persuasive argument against the majority's decision is that Pennsylvania has not adopted the UDITPA. *Welded Tube Co. of America v. Commonwealth*, 101 Pa.Cmwlth. 32, 515 A.2d 988 (1986). A current table of twenty-three jurisdictions which have adopted the UDITPA shows that Pennsylvania is not among them. Courts of this Commonwealth are instructed to narrowly construe tax statutes, *Ross–Araco Corp. v. Board of Finance and Revenue*, 544 Pa. 74, 674 A.2d 691 (1996), and we must presume that since

1. In my view the majority's analysis gives controlling weight to the f.o.b. ("free on board") point, while claiming that it does the opposite. If tangible personal property is to be delivered f.o.b. to the seller's plant in Pennsylvania, in general possession passes at that point and the purchaser assumes all risk of loss. In the absence of some contractual restriction, the purchaser may dispose of the goods in any manner after that point. If goods are to be delivered f.o.b. at the purchaser's place of business out of state, the seller has assumed responsibility for and risk of shipping the goods, and title in them does not pass until they are received. They are not delivered to the purchaser in the state. *See* Section 2319 of the Uniform Commercial Code, 13 Pa.C.S. § 2319; *Swift Canadian Co. v. Banet*, 224 F.2d 36 (3d Cir.1955). Section

401(3)2(a)(16) provides that a sale is in this state if it is delivered to a purchaser in this state, regardless of the f.o.b. point. Thus, if a purchaser picks up goods, even though the f.o.b. point might be at its location, the statute defines that event to be a sale in the state, and the Department's regulation reasonably gives effect to the statute.

2. Gilmour's citations include among others: *Texaco, Inc. v. Groppo*, 215 Conn. 134, 574 A.2d 1293 (1990); *Revenue Cabinet v. Rohm and Haas Kentucky, Inc.*, 929 S.W.2d 741 (Ky.Ct.App.1996); *Olympia Brewing; McDonnell Douglas Corp. v. Franchise Tax Board*, 26 Cal.App.4th 1789, 33 Cal.Rptr.2d 129 (2d Dist.1994); *Parker Banana;* and *Lone Star Steel Co. v. Dolan*, 668 P.2d 916 (Colo.1983).

the legislature has not adopted the UDIT-PA and its interpretation by other jurisdictions, the legislature does not intend to follow the destination rule in apportioning sales of tangible personal property for CNI tax purposes. Therefore, the requirement that statutes uniform with those of other states shall be interpreted and construed to effect uniformity among the states is not controlling in this case. *See* Section 1927 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1927.

Finally, I note that the administrative ease of defining where delivery occurs as compared to the uncertainty inherent in determining the destination of property relinquished at the taxpayer's loading dock is a factor favoring the Department's interpretation as codified in its existing regulation. This factor alone, however, is not determinative, nor can I conclude that another interpretation necessarily would conflict with the Tax Code or otherwise be erroneous. Nonetheless, because the Department's interpretation is not inconsistent with the Tax Code and does not violate legislative intent, the majority has committed a fundamental error in disregarding the Department's regulation in favor of another regulation not adopted by the Department. In essence, the majority injects its own interpretation of Section 401(3)2(a)(16). I would deny Gilmour's exceptions and reaffirm the Board's order.

Judge FLAHERTY joins in this dissent.